MARGARET CRAWFORD, Appellant, v. HELEN COUCH, individually and as executrix, Appellee.

No. 46494.

SEPTEMBER 19, 1944.

Howard L. Bump, of Des Moines, for appellant.

Herrick, Sloan & Langdon, of Des Moines, for appellee.

WENNERSTRUM, J.— Margaret Crawford, the plaintiff, brought a suit in equity against her sister, Helen Couch, as an individual, and also against her as executrix of the estate of Mary Couch, deceased. She thereby sought to have a trust impressed upon securities received by the defendant, Helen Couch, from the estate of their mother, Mary Couch, and also upon certain real estate conveyed to the defendant by their mother. The trial court dismissed plaintiff's petition, holding that the

evidence presented did not sufficiently sustain the allegations of the petition and the amendment thereto. The plaintiff has appealed.

It is appellant's claim that the mother of the appellant and appellee took possession of securities that rightfully belonged to the estate of her husband, John Couch. It is her further claim that these securities did not thereafter become a part of the estate of Mary Couch but belonged to Margaret Crawford, Julia Roark, and Helen Couch. Appellant seeks to impress a trust on the property given to the \appellee, Helen Couch, by their mother, by will and deed. It is contended the property received from the estate of Mary Couch, as well as the property deeded by the mother to Helen Couch, was an undistributed asset of the unadministered estate of John Couch, and that said property should be divided equally among all of the daughters. It is claimed that the mother had also agreed to make a will that would provide for equal distribution of the mother's estate to all the daughters.

John and Mary Couch, as previously stated, were husband and wife. John Couch died January 9, 1927, and Mary Couch died December 21, 1941. The father and mother were both survived by three daughters, namely, Margaret Crawford, the appellant, Helen Couch, the appellee, and Julia Roark. The real estate involved in this litigation is a home property located in the city of Des Moines. The record discloses that by a deed, dated and acknowledged November 15, 1913, John Couch conveyed this property to his wife, Mary Couch. This deed was recorded on August 12, 1938, approximately twenty-five years after the deed was signed and acknowledged and over three years before the death of Mary Couch. Testimony was given by Helen Couch, the appellee, that she saw the deed in a tin box that her mother had in the home for the keeping of valuable papers. She testified that she first saw the deed in the mother's box in 1913.

The record further discloses that on September 10, 1927, Helen Couch, then married, and her husband, and also Julia Couch, signed a quitclaim deed conveying the home property to Mary Couch. It is also shown that Margaret Crawford and her husband thereafter signed this deed. The acknowledgment of

the execution of the deed by Margaret Crawford and her husband before a notary was dated November 5, 1935.

The evidence also discloses that on September 10, 1927, the same day the quitclaim deed by Helen Couch and her husband and Julia Couch was signed, Mary Couch executed a will wherein, after making a small bequest for religious purposes, she willed and bequeathed the remainder of her property to her three daughters. It is also shown by the record that Mary Couch executed a second will on October 26, 1935, wherein, after making a small bequest for religious purposes, she left the remainder of her property to the appellee, Helen Couch. It is shown by the record that on March 25, 1939, Mary Couch conveyed the home property to her daughter Helen Couch. This deed was recorded March 27, 1940. It will be kept in mind that the mother died December 21, 1941.

It is the claim of appellant in her petition that at the time of the death of John Couch he had personal property in cash and securities of the approximate value of $12,000. It is further alleged that there was no administration upon the estate of John Couch; that Mary Couch took possession of the personal property belonging to the estate of John Couch and also the real estate claimed to be in his name. It is asserted that there was no division or distribution to the heirs of John Couch and that Mary Couch obtained control and used the real estate and personal property as trustee and for the benefit of her three daughters. It is further contended that she did not in her lifetime renounce the claimed trust, and that by reason of the terms of the will of Mary Couch, wherein she bequeathed and devised all her property to Helen Couch, the appellant and her sister Julia Roark were deprived of any claim, right, or interest in the claimed estate of their father, John Couch. The appellant asked in her petition that the court hold that Mary Couch was trustee of two thirds of the personal property of John Couch and that the executrix of the Mary Couch estate be required to account therefor. Appellant further prayed in her petition that the court decree that the appellant, as plaintiff, be entitled to a two-ninths interest in the home property and the personal property found to belong to John Couch at the time of his death and that said interest be quieted in her. The appellant in an amendment to

1250

the petition further alleged that the signing of a quitclaim deed by the two older sisters was upon the condition that the mother would make a will bequeathing and devising all of her property equally among the three daughters, and as to the younger sister, it is alleged that the quitclaim deed was signed by reason of statements made by the mother that such a will had been executed.

J. J. Peel, a brother of Mary Couch, testified that shortly after the death of John Couch in 1927 he accompanied his sister Mary, the wife of John Couch, to a Des Moines bank and was there when a safe-deposit box was opened. The only persons present at that time were the witness and Mary Couch. He testified that there was $14,500 in cash in the box; also one mortgage of $1,800 and another mortgage of $1,100 that the witness owed. He also testified there was a note of $150 in the box and a further mortgage of $1,800. He stated that he was sure there was $14,500 in currency in the safe-deposit box and stated that he counted the money. The witness also testified that John Couch worked as a blacksmith for a streetcar company and made the approximate sum of $100 a month. It is also shown that during a portion of the married life of John Couch and Mary Couch they operated a small suburban grocery.

Orpha Peel, wife of J. J. Peel, testified that she had a conversation with Mary Couch on December 28, 1940, in which Mary Couch stated that she still had $12,000 in the safe-deposit box in the bank vault. The witness stated that Mary Couch did not say where the money came from and further testified that this was the only conversation that she ever had with Mary Couch about these funds. The witness testified that this claimed conversation was in the presence of her husband. However, the witness J. J. Peel did not in his testimony testify as to any conversation that his wife had with Mary Couch on December 28, 1940, which is the date stated by Mrs. Peel in her testimony that Mary Couch admitted that she had $12,000 in cash. In Peel's testimony he stated that the last time he had a talk with Mary Couch was on January 28, 1940, when she admitted to him she had $12,000 in cash. In the same portion of his testimony he further stated that on December 15, 1941, she (Mary Couch) said that she and Helen were going to put it all in postal bonds.

The appellee, Helen Couch, testified that she had a joint

interest in the safe-deposit box in the bank and had gone to the bank with her mother to open the box. She testified that the box had been opened prior to her father's death and that there was no money in it. She also testified that she never saw any money in the box. The records of the bank show that the safe-deposit box was a joint one held in the name of Helen Couch and Mrs. Mary Couch. It is shown the box was first rented December 21, 1926, and that the rental arrangement continued until the box was surrendered on October 22, 1942.

The inventory and preliminary inheritance-tax report of the estate of Mary Couch, deceased, shows that Mary Couch died seized of postal-savings certificates in the amount of $2,500 and certain notes and one certificate of stock in the total amount of $2,275. The entire estate as inventoried totaled $4,775.

I. It is the contention of the appellant that the securities claimed to have been owned by John Couch at the time of his death, and which it is asserted were appropriated by his wife, Mary Couch, were held in trust by the mother for the benefit of the father's heirs. The pleadings of the appellant in the trial court allege that the claimed appropriation of the personal property asserted to have been possessed by John Couch prior to his death created a trust. The appellant does not state in her pleadings or in her brief and argument whether a resulting or constructive trust was created by the actions of Mary Couch.

In order that we may ascertain from the facts heretofore set forth whether a resulting trust has been created, it is advisable to first determine in what manner a resulting trust is created.

In the case of In re Estate of Mahin, 161 Iowa 459, 465, 143 N. W. 420, 423, it is stated:

"To create a 'resulting trust' the party claiming the trust may show: (1) Payment by the cestui que trust with her own money. (2) The intention on the part of the cestui que trust at the time of the conveyance that a trust be created. (3) Conveyance to the trustee. (4) Acknowledgment on the part of the trustee of the trust, or his assent thereto, or failure to dissent after knowledge."

A further statement as to the manner in which a resulting

trust may develop is found in the Restatement of the Law, Trusts, 1250, section 404, where it is stated:

"A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of."

If the father created a trust, under circumstances that might now be termed a resulting trust, he or his estate was the beneficiary or cestui que trust.

Applying the facts in this case to the claimed manner in which a resulting trust may be established as set out in In re Estate of Mahin, supra, we cannot find sufficient, if any, evidence that (1) any payment was made to Mary Couch, the mother, by the claimed cestui que trust (the father) of any of his money. We can find no support in the evidence (2) of any intention on the part of the claimed cestui que trust (the father) at the time of any purported transfer of the money or securities that a trust was to be created. There is no evidence (3) of any transfer or passing of title of any of the money or securities to the claimed trustee; and finally, there is no evidence (4) of any acknowledgment on the part of the trustee of the trust, or that the mother assented thereto, or that she failed to dissent to any trust agreement after her knowledge of the claimed trust. In making the foregoing statements we do so upon the assumption that John Couch had the amount of money and securities it is claimed that he had prior to his death. As to this fact we hold that there must be the same clear, convincing, and satisfactory evidence as is necessary to establish a resulting trust.

Further applying the facts disclosed by the evidence presented in this case to the statement set forth in the Restatement of the Law of Trusts, supra, we are unable to reach the conclusion that the father made or caused to be made a disposition of his claimed property under circumstances which raise an inference that he did not intend that the person taking or holding the property should have the beneficial interest therein.

The evidence, to show a resulting trust, must be clear

and certain and must be such as would convince a court of the truth of the facts on which equity might create a resulting trust. In re Estate of Mahin, supra, page 466 of 161 Iowa, page 423 of 143 N. W.

The evidence in no way supports the theory that a resulting trust was created of the funds and property claimed to have been held by John Couch during his lifetime. We therefore hold that the trial court was correct in its ruling that a trust had not been established on the theory that what Mary Couch did created a resulting trust.

We shall not discuss in detail whether or not the evidence would give support to the court's holding that a constructive trust had been established. To establish a constructive trust, one that the court constructs, the evidence must be clear and satisfactory. Matt v. Matt, 156 Iowa 503, 520, 137 N. W. 489, 495. In the case of McMains v. Tullis, 213 Iowa 1360, 1366, 241 N. W. 472, 474, it is stated that to establish an implied or constructive trust the evidence must be clear, convincing, and satisfactory. Under the evidence in the instant case we would not be justified in holding that a constructive trust could be created by the court even if the appellant had so pleaded.

II. Appellant makes the claim that Mary Couch did not obtain full title from her husband under the deed dated November 15, 1913, because it was not delivered during the lifetime of John Couch, the grantor. This contention of the appellant cannot be sustained. In the recent case of Hodgson v. Dorsey, 230 Iowa 730, 733, 298 N. W. 895, 896, 137 A. L. R. 456, we reviewed and cited the prior holdings of this court in connection with the presumption of delivery of a deed that has been signed, acknowledged, and recorded. We there said:

"It has been the universal holding of this court that where a deed has been signed, acknowledged and recorded, it is presumed to have been properly delivered and those who attack a deed assume the burden to overcome the presumption of delivery. Burch v. Nicholson, 157 Iowa 502, 137 N. W. 1066; Robertson v. Renshaw, 220 Iowa 572, 579, 261 N. W. 645, 648; Jones v. Betz, 203 Iowa 767, 210 N. W. 609, 213 N. W. 282; Kiser v. Morton Farm. Mut. Ins. Assn., 213 Iowa 18, 23, 237 N. W.

328; Tutt v. Smith, 201 Iowa 107, 110, 204 N. W. 294, 48 A. L. R. 394. There must be presented, evidence that is clear, convincing, and satisfactory to overcome the presumption of delivery.''

The record is devoid of any evidence that would overcome the presumption as to the delivery of the deed.

III. It is the further claim of the appellant that the trial court was in error in holding that the appellant had failed to establish any agreement between Mary Couch and her three daughters that she would will her property to them. The appellant maintains that her own testimony, as well as that of Julia Roark, is admissible. Appellee maintains that appellant and Julia Roark are incompetent witnesses by reason of Code section 11257, commonly referred to as the ''dead man statute.'' Helen Couch is claiming the real estate under the deed given to her by her mother. She is sued as an individual, as well as in her representative capacity. As regards the personal property, which she is claiming as executrix and legatee of her deceased mother, she is entitled to the protection of the statute. Appellee's claim to the real estate is based on the deed given her by her mother and as such grantee she would not be entitled to this objection.

We have given consideration to the cases cited by the appellant but the facts set forth in them are not applicable to the situation presented in the present case before us for review.

After a full consideration of the facts and the law as applied thereto we conclude that the trial court was correct in dismissing appellant's petition and that it should be affirmed.—Affirmed.

All JUSTICES concur.