NELLIE M. DYSON, Appellee, v. JAMES E. DYSON et al., Appellants; CLARA CALVIN et al., Defendants.

No. 46887.

DECEMBER 17, 1946.

Floyd E. Page, of Denison, C. Glenn Garten, A. Dean Flanders, and Herrick, Sloan & Langdon, all of Des Moines, for appellants.

L. W. Powers, of Denison, for appellee.

Dennis D. Drugswall, of Lake Mills, and Switzer, Jackson & Clarke, of Des Moines, for defendants.

HAYS, J.—In 1938, T. E. Dyson, then a widower, executed warranty deeds, reserving to himself a life estate, to certain described real estate. The grantees therein are his two sons, James E. Dyson and Ralph E. Dyson. In April 1940, T. E. Dyson and Nellie M. Dyson, appellee, were married. In August 1940, at the behest of James E. Dyson, the deeds were recorded in the proper counties. T. E. Dyson died in 1944 and this action was commenced by the widow, appellee, to establish her widow's one-third interest therein. She alleges that the deeds were not delivered until after her marriage to T. E. Dyson; that she, not having joined in said conveyances, is entitled to her one-third interest. Defendants Dyson, appellants, deny plaintiff's allegations and allege the deeds were delivered long prior to the marriage. Under the issues thus joined the trial court found nondelivery prior to the marriage and established a widow's one-third interest in said real estate. From this finding, only the defendants Dyson appeal.

Appellants rely upon a single proposition for a reversal. They allege that:

"The plaintiff failed to sustain her burden of proving nondelivery of the deeds prior to her marriage to T. E. Dyson. That the deeds were in fact delivered to the sons in 1938, almost two years before plaintiff met decedent in March of 1940, is con-

clusively shown by the evidence. Under this record the court should enter a decree dismissing plaintiff's petition.''

While certain positive facts appear in the evidence, appellants rely largely upon presumptions recognized by the courts in this type of case to establish delivery. A presumption may be defined as a rule of law that attaches definite probative value to specific facts, or draws a particular inference as to the existence of one fact, not actually known, or arising from its usual connection with other particular facts which are known or proved. A presumption, however, must always conform to the commonly accepted experiences of mankind and the inferences which reasonable men would draw from such experiences. 20 Am. Jur. 161, 162, section 158.

Positive, definite proof of the following facts appears: The deeds were warranty deeds reserving a life estate to grantor. The grantees therein are grantor's sons, the natural objects of his bounty. Grantor at the time he executed the deeds was a widower. The deeds were filed for record by the grantees. These facts are conceded by all parties and it is further conceded by appellee that the deeds were delivered to the grantees at least at the approximate date of the recording. The point of difference between appellants and appellee is the question *when* were they delivered with reference to the date of appellee's marriage to grantor.

That appellee has the burden of proving nondelivery, prior to her marriage, is clear. This court has consistently held that where a deed has been signed, acknowledged, and recorded, it is presumed to have been properly delivered and one who attacks the deed assumes the burden to overcome the presumption of delivery. To do this clear and satisfactory proof is required. Hodgson v. Dorsey, 230 Iowa 730, 298 N. W. 895, 137 A. L. R. 456; Crawford v. Couch, 234 Iowa 1246, 15 N. W. 2d 633; Jones v. Betz, 203 Iowa 767, 210 N. W. 609, 213 N. W. 282; 26 C. J. S. 591, section 183. This rule or presumption applies even though the recording is after the death of the grantor. Ferrell v. Stinson, 233 Iowa 1331, 11 N. W. 2d 701. In the instant case, the recording being subsequent to appellee's marriage, it is similar to cases of recording after death of grantor and the same presumptions apply.

██ We recognize and adopt the rule that where a deed reserves a life estate to the grantor it is presumed that immediate operation of the deed, as a conveyance of a present interest, is intended. Kneeland v. Cowperthwaite, 138 Iowa 193, 115 N. W. 1026; McKemey v. Ketchum, 188 Iowa 1081, 175 N. W. 325. It is likewise the rule that mere retention of possession by the grantor of such a deed does not necessarily negative effective delivery, especially where the grantees are the natural objects of his bounty and it is a voluntary settlement. Collins v. Smith, 144 Iowa 200, 122 N. W. 839; Ferrell v. Stinson, supra, 233 Iowa 1331, 11 N. W. 2d 701.

. Delivery is essentially a question of intention upon the part of the grantor. It may be effected by acts without words, or by words without acts, or by both words and acts. Arndt v. Lapel, 214 Iowa 594, 243 N. W. 605. Thus we have held that statements made by grantor to the effect that he had executed deeds is worthy of careful consideration in determining the question of delivery. Dolph v. Wortman, 185 Iowa 630, 168 N. W. 252; Kyle v. Kyle, 175 Iowa 734, 157 N. W. 248.

██ Bearing in mind that a presumption is rebutted when facts to the contrary are established, the ultimate question is whether the record presents a fact situation in which it is for the court to determine as a matter of law that the presumed fact did not exist. The assumed fact being delivery prior to April 17, 1940, the date of appellee's marriage, has appellee produced the quantum of proof necessary to show nondelivery? Let us examine the record.

In 1938 T. E. Dyson, a widower, stated to his half brother a desire to arrange for his property to go to his two sons, appellants herein. Shortly thereafter he consulted with E. S. White, an attorney at Harlan, Iowa, concerning this matter. At that time, the matter of what would constitute a delivery such as would make deeds effective was discussed. Mr. White testified as follows:

"I told him in effect, Judge, that until there was such a delivery as was valid in law—and I took particular pains to explain that—there will be no passing of title."

The deeds were prepared in Mr. White's office and sent by

mail to T. E. Dyson at his home in Manilla, Iowa. Accompanying the deeds was a letter in which the importance of delivery was stressed. In that letter grantor was advised that the deeds might be delivered by the escrow plan (envelopes were enclosed for use in case this method should be used); that he could deliver the deeds to one of his sons with instructions to record, or not, as he and his sons might decide; that the deeds would be perfectly valid without being recorded at this time and might be held by the sons in a safe-deposit box or other safe place. The deeds were duly acknowledged on June 13, 1938. Shortly thereafter T. E. Dyson told his half brother he had drawn deeds for his property to go to his boys equally.

In July 1938, he visited with his son Ralph at his home in Minot, North Dakota. He was to go with them to Yellowstone Park, where they would meet his son James. Concerning this visit, Mrs. Ralph Dyson testified:

"T. E. Dyson had the deeds to his farm property and his other property, and I recall that he told my husband: 'I have deeded all my property to you and Everett,' and he went and got his deeds. They laid them out on the table, discussed the properties involved and he explained all of the details of the past business transactions he had had."

The deeds were then placed in a safe belonging to Ralph and they left next day for the west. While at Yellowstone Park these deeds were discussed with both Ralph and James E. (Everett). In September 1938 James Dyson visited at his father's home in Manilla. The deeds were then in the possession of T. E. Dyson. Mrs. James Dyson states that at this time T. E. Dyson gave them to her husband, who put them in his pocket and walked out of the house.

In April 1940 T. E. Dyson and appellee were married. They continued to reside in his home at Manilla. Appellee states that in June 1940 she saw the deeds in a file case at the home, where her husband kept his papers. The envelopes, prepared for use if escrow delivery was desired, were also there. In July the deeds disappeared from this file. Appellee states she saw a letter from Mrs. J. E. Dyson to her husband stating that they had taken the papers to their attorney and would

have them recorded. The letter was not produced nor did Mrs. Dyson deny writing it. On August 6, 1940, T. E. Dyson and appellee executed an easement over part of the land to a railroad company. On August 13, 1940, the deeds were recorded in the proper counties, they having been filed ·for record by James Dyson.

The·record shows that a part of the real estate was heavily encumbered; that T. E. Dyson and C. J. Dyson were liable on the same. This indebtedness was owned by the Anton Bast estate. In·July and August 1940 suit was being threatened on this indebtedness and on August 23, 1940, foreclosure was commenced, with judgment taken for some $15,000 in July 1941. This judgment was satisfied of record in 1942.

While the record discloses other statements made by grantor to other parties, they were made after it is conceded the deeds were delivered, and have little, if any, probative value. The same is true of letters written by the sons to their father. We have set forth the salient facts as they appear in the record.

As before stated, presumptions must always conform to the commonly accepted experiences of mankind and the inferences which reasonable men would draw from such experiences. Also, presumptions disappear when facts to the contrary appear. Without the aid of presumptions, as above set forth, there is nothing in this record even hinting at a delivery except the two incidents in 1938 when the deeds were in the possession of the grantees. These will be discussed later. As against these presumptions the record discloses a desire upon the part of the grantor to arrange for his property to pass to his sons. He had been carefully advised that in order to do this certain methods of delivery were valid. While others may have been, he was not so advised. The deeds were in his possession in June 1940, subsequent to his marriage. In August the deeds were recorded by the grantees, his sons, under circumstances remarkably in accordance with the instructions he had received from his attorney. Those instructions were "by giving to your sons to be recorded." James E. Dyson testified as follows:

"Q. You got them through the mail. How long was that before you sent them out for recording? A. A few days, I

suppose. * * * Q. Well, what do you mean by a few days? A. Oh, a week, ten days, thirty days."

Drawing the inferences from this record that reasonable men would draw, one cannot escape the conclusion that, so far as the presumptions are concerned, they have been rebutted and are of no avail to appellants.

Turning to the incidents in 1938, where actual possession of the deeds was had by both James and Ralph Dyson, we have held that the mere transfer of manual possession from grantor to grantee is not conclusive, for the legal effect of the transfer is a matter of intention. Miller v. Armstrong, 234 Iowa 1166, 15 N. W. 2d 265. The deeds were not retained by grantees nor recorded by them at this time. They were returned to grantor, when or how we do not know, except that it was prior to June 1940, when they were in grantor's file case. They were received through the mail by James Dyson in July or August 1940 and recorded. There is nothing in these transactions to show an intention upon the part of the grantor to transfer title without reservation of control thereover, which is essential to a delivery. Lathrop v. Knoop, 202 Iowa 621, 210 N. W. 764. In fact, it shows the contrary.

Under the record, we are convinced the trial court is correct and should be and is—Affirmed.

All JUSTICES concur.