ZETTIE M. GILMER, Appellant, v. STELLA NEUENSWANDER et al., Appellees; L. H. BUENNEKE, Guardian, Intervener, Appellee.

No. 46994.

JUNE 17, 1947.

R. Eldon Laird, of Waverly, for appellant.

E. B. Shaw, of Oelwein, for appellees, except Opal Gilmer Zanatta.

MANTZ, J.—On February 9, 1932, Alice Gilmer, a widow, was the owner of an eighty-acre farm in Fayette County, Iowa.

At that time she had four living children, all adults. When this case was tried in 1945 Alice Gilmer was past ninety-two years of age and was under voluntary guardianship. A son, E. Gilmer, died intestate on January 10, 1945, leaving surviving him his spouse, Zettie M. Gilmer, plaintiff herein, and an adult daughter, Opal Gilmer Zanatta. The widow, Zettie M. Gilmer, brought this action in partition, claiming to be the owner of an undivided one twelfth of the above-described real estate, as the widow of E. Gilmer. The petition is in the usual form and asks for a sale of the property on the ground that the same cannot be conveniently divided.

It is the claim of plaintiff that E. Gilmer died seized of an undivided one fourth of the above real estate, claiming that he derived said interest under a certain warranty deed made by Alice Gilmer to her four living children on February 9, 1932, said deed purporting to convey to each child an equal share in and to said real estate.

This claim of plaintiff was resisted by F. M. Gilmer and Stella Neuenswander, living children of Alice Gilmer, and by Percy Neuenswander, living spouse of Madge Gilmer Neuenswander; deceased, and their daughter, Jeanette Neuenswander. Their answer denies the validity of such deed and alleges that same, if made by Alice Gilmer, was never delivered and was of no force and effect. L. H. Buenneke, as guardian of the person and property of Alice Gilmer, likewise resisted plaintiff's claim, denied the validity of the deed under which plaintiff claims as widow of E. Gilmer, and further claimed said real estate as the property of his ward.

The trial court denied the claim of plaintiff and held that the claimed deed, not having been delivered during the lifetime of the grantee, was of no validity, and quieted title therein in Alice Gilmer. This appeal followed.

There are some disputes in the evidence. The deed involved purported to bear the signature of Alice Gilmer, was dated February 9, 1932, and was acknowledged on the same date by Albert B. Blunt, a notary, who was deceased at the time of the trial. Alice Gilmer did not testify. Appellant claims that said grantor was in court at the time of the trial. The

record does not so show. The surviving children of Alice Gilmer, although grantees in the deed, testified that they never knew of it until the action was brought. They claim nothing thereunder. Neither do the spouse and heirs at law of the deceased daughter, Madge. The deed was thirteen years old when E. Gilmer died and so far as the record shows he never mentioned it to either his brother or sisters. The record does not show anything bearing directly upon the making of the deed or the circumstances under which it was made. There was in the record evidence that the signature on the deed was that of Alice Gilmer. In this decision we will assume that she signed the deed.

Following the making of the deed, and up to the time of the death of E. Gilmer, the grantor exercised control over the property described therein and used the revenues therefrom for her support. The record shows that following the date of the deed she spoke of such property and of her possible need thereof and also stated that she had made out a paper conveying same to her four children when she was through with it; that by reason of such paper it would not have to go through court. There is also in the record testimony that shortly before his death E. Gilmer made statements inconsistent with a claim of ownership under the deed and which had the effect of corroborating the statements of Alice Gilmer above described. The principal dispute in the record is as to where the deed was found after E. Gilmer died. Appellant claims that it was in the possession of E. Gilmer in an iron safe in his home, where it was found shortly following his death, by his daughter, Opal Gilmer Zanatta. Opal testified positively to that effect and claimed that a short time later she took the deed and some other papers to a lock box in a bank at Maynard, Iowa, which contained papers belonging to her father; also others belonging to Alice Gilmer. She testified that the deed remained in such lock box until April 1945, when she took it to her attorney, who recorded it on November 19, 1945. For a number of years the lock box had stood in the name of Alice Gilmer or E. Gilmer. Both had access to it and both kept various papers therein.

The trial court in a finding of fact disregarded the testimony of Opal that the deed was in her father's safe in his home at his death, and concluded that the deed when found was in the lock box at the Maynard bank and that the grantor had not delivered same to any of the grantees and that the same was still under the control of the grantor. We hold that under the record the decision of the trial court was right.

I. Various propositions have been argued by the parties. Appellant argues that the controlling question in the case is that of the delivery of the deed. She also argues as to the competency of various witnesses offered by the appellees, urging that such witnesses were incompetent under what is known as the "dead man statute," section 622.4, 1946 Code of Iowa. We will first take up the question which appellant argues is controlling: the delivery of the deed.

She argues that the deed, being in the possession of a grantee, E. Gilmer, at his death, a presumption arises that the same had been delivered and was therefore effective. Where an instrument, such as the one here involved, is in the possession of the grantee, such rule applies and the burden rests upon the party attacking the same to rebut such presumption. However, where such possession is not shown the presumption does not obtain. In any event, a presumption must ever conform to the commonly accepted experiences of mankind and the inferences which reasonable men would draw from such experiences. 20 Am. Jur., Evidence, section 158; Dyson v. Dyson, 237 Iowa 1285, 25 N. W. 2d 259.

The Dyson case is a very recent decision of this court. There this court, speaking through Hays, J., made a careful analysis of the pronouncements of this court dealing with the question of delivery of written instruments. Without setting out the cases therein cited, we call attention to them as setting forth the rules to be followed where there is dispute as to whether or not an instrument stands or falls by reason of the question of delivery.

Appellant argues throughout that as the testimony of Opal Gilmer Zanatta that she found the deed in a safe belonging to her father in his home stands uncontradicted it must stand

as a verity, and that such apparent delivery is presumed, and in such event appellees have failed to show nondelivery by the evidence. This court recently held, in the cases of Benson v. Custer, 236 Iowa 345, 17 N. W. 2d 889, Orr v. Graybill, 237 Iowa 628, 23 N. W. 2d 414, that the court is not required to accept as a verity uncontradicted testimony but that the same should be scrutinized closely as to its credibility, taking into consideration all other circumstances throwing light thereon. Opal was an interested witness. Her interest, if any, in the land sought to be partitioned is double that of her mother, the appellant. Her testimony of the finding of the deed, where and under what circumstances, where it was placed when she removed it some three months later, the fact that she did not consult the other grantees in taking it away for record, all are matters from which reasonable minds might draw inferences contrary to her unchallenged declaration as to where she first saw the deed. The trial court, following a careful analysis of the record, failed to accord to Opal's testimony the weight to which appellant claims it is entitled. We agree with the trial court in such respect.

II. Even should we assume that the grantor delivered the deed to E. Gilmer, one of the four grantees, does it naturally follow that she did so with the intention that it was a full and final delivery? We have held many times that the delivery of a written instrument to give it legal effect necessarily depends upon the intention of the grantor. We so held in Dyson v. Dyson, supra. See, also, 30 Iowa L. Rev. 108; Miller v. Armstrong, 234 Iowa 1166, 1169, 15 N. W. 2d 265, 266. In the Miller case we said:

"We have the sole question of valid delivery to determine. It is not necessary to go outside our own jurisdiction for cases holding that mere transfer of manual possession from grantor to grantee is not conclusive but that the legal effect of the transaction is a matter of intention. Witt v. Witt, 174 Iowa 173, 177, 156 N. W. 321; Dolph v. Wortman, 185 Iowa 630, 168 N. W. 252; Lawson v. Boo, 227 Iowa 100, 104, 287 N. W. 282; Brien v. Davidson, 225 Iowa 595, 281 N. W. 150, 282

N. W. 480. These are but a few of the many cases that could be cited.''

In the Dyson case there was involved the question of the delivery of two deeds from a father to his two sons. In that case, prior to the recording, the deeds were in the possession of grantees. It was held that the various transactions between the parties failed to show an intention on the part of the grantor to transfer title without reservation of control thereover which is essential to delivery. See, also, Lathrop v. Knoop, 202 Iowa 621, 210 N. W. 764, and many Iowa cases there cited.

The grantor, Alice Gilmer, did not testify. However, during all the years following the making of the deed in February 1932 she exercised control over the land in controversy. She received the income therefrom. During a part of this time her son, E. Gilmer, acted as her agent in handling said farm. Out of the proceeds necessary expenses were paid and the balance was used in behalf of grantor. Stella Neuenswander, a daughter and one of the grantees, testified that Alice Gilmer had said, ''you don't know how long I might live or what might happen to me, that I will need it all,'' and she said, ''I don't think any of my children want me to divide it now.'' She further stated that she might need the farm. She further stated in effect that she had made out a paper which was to be taken to West Union after she was gone and everything would be divided equally. While the competency of the witness Stella was challenged under the dead man statute, we do not think the objection was good. Alice Gilmer was living at the time Stella testified and was neither a lunatic nor insane. She could have contradicted Stella's testimony. Section 622.4, Code of 1946 (section 11257, Code of 1939). Such evidence as to statements made by the grantor after the deed in controversy was signed throws considerable light on the question of the intention of Alice Gilmer in making it. From such it could be reasonably inferred that she made the deed with the intention that what she had following her death should go to her children share and share alike and that no court procedure was necessary.

■ In addition, there is evidence that E. Gilmer, appellant's deceased spouse, knew of such arrangement. Shortly prior to his death he had a conversation with Mrs. Arch Shepherd, who at that time and for some time previously had been taking care of Alice Gilmer. She had been employed to do such work for an agreed wage with no definite understanding or agreement as to time. Over objection as to her competency under the dead man statute, she testified that she was not related to Alice Gilmer and stated that her interest was as follows:

"Most assuredly, I have an interest in this litigation to the extent that I desire to see that I am properly paid for any care that I give to Alice Gilmer."

She further stated she had been paid up to date for the care of Alice Gilmer but was under no obligation or agreement to keep her any longer if the pay ceased. The only thing which would render Mrs. Shepherd incompetent under the dead man statute would be a showing that she was a person interested in the event thereof. This court has frequently discussed the nature of the interest which will render a witness incompetent. In the early case of Wormley v. Hamburg, 40 Iowa 22, 25, this court, in discussing this matter, said:

"The interest which disqualifies a witness must be present, certain, and vested interest, and not an interest uncertain, remote, or contingent. The true test of the interest of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him, in some other action."

An examination of the decisions of this court will show that this court has repeatedly restated the ruling of the Wormley case. See, also, Schmidt v. Schurke, 238 Iowa 121, 25 N. W. 2d 876; Lyon County Nat. Bk. v. Winter Estate, 214 Iowa 533, 242 N. W. 600.

■ We hold that Mrs. Shepherd was not disqualified as an interested witness to relate a conversation had with E. Gilmer concerning his view as to what his mother had provided for the disposition of her property. Witness testified that E. Gilmer

had talked about this same matter. The last talk took place in the home of the witness and was the day before E. Gilmer died. He called at the home of Mrs. Shepherd. As the statement is quite material as to the view E. Gilmer took regarding the arrangements his mother had made for the disposition of her property, we quote:

"A. He told me, he said Mrs. Shepherd, I have something to tell you, it may do you some good and it may never, he said, there is a paper that is left and he said when—my mother should be taken care of as long as she lives, and after she is gone and, he says, there is plenty to take care of her, I think, then, he says, after she is gone then this has to go through no court or nothing, but it should be equally divided among the children, what is left, if there is anything left to be divided. Q. Now, that conversation took place in your home, you say, the day before he died? A. The day before he died, truthfully. Q. Would that be in January, 1945? A. That would, yes sir. Q. Did you ever have any other occasion for any discussion with Mr. E. Gilmer? A. He had told us that several times but this one day in particular and he said, I am afraid my days are numbered. Mr. Laird: Just a second; I wish to interpose this objection, the same objection as heretofore made. Q. All right. A. He said this, I would like to tell you for I have got a lot of grief and it has got the best of me."

Such statements coming from one of the alleged grantees of a deed do not indicate a claim of ownership. These statements of E. Gilmer could raise the inference that they were against his interest and as such would be admissible. Davis v. Melson, 66 Iowa 715, 24 N. W. 526; Walter v. Brown, 115 Iowa 360, 88 N. W. 832; Robinson v. Robinson, 22 Iowa 427. Here was a grantee of a thirteen-year-old deed and the record is barren of any statement or claim by him of such ownership or the right to possession thereof. It rather speaks of an understanding of what his mother intended to do with what was left of her property after she was gone. It might fairly be inferred that the paper referred to was the deed in question. She had

the understanding that at her death no court action was needed—simply the recording of the paper and an equal division of what was left. That she might have misunderstood its legal effect would not defeat her intention in an attempt to dispose of her property.

In conclusion we hold that the trial court decided the issues correctly and consequently the case is affirmed.—Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, HALE, HAYS, MULRONEY, and SMITH, JJ., concur.