HELEN HILLIARD, Appellee, v. F. R. HILLIARD, Appellant.

No. 47528.

(Reported in 39 N.W. 2d 624)

NOVEMBER 15, 1949.

Life & Davis, of Oskaloosa, for appellant.

Bray, Carson & McCoy, of Oskaloosa, for appellee.

GARFIELD, J.—Plaintiff and defendant are daughter and son and sole heirs of E. R. and Laura B. Hilliard, deceased. On November 8, 1944, Laura, the mother, owned the north half of a certain lot 3 and a certain lot 5, and E. R., the father, owned lot 6, adjoining said lot 5, all in Oskaloosa.. A building previously used for a religious mission was situated on the north half of lot 3. It is known as the mission property. A residence was located on lot 5 and two residences, one the family home, were on lot 6. Neither parent owned other real estate.

On November 8, 1944, the mother and father executed a warranty deed of the mission property to plaintiff and defendant and a warranty deed of lot 5 to plaintiff, Helen. At the same time the father and mother made a warranty deed of lot 6 to defendant, F. R. Hilliard. The deed to plaintiff of lot 5 was never recorded. The father was quite ill on November 8 and

died intestate two days later. He would have been eighty-five in December. Defendant continued to live in the family home with his mother until January 1948, when she died at eighty-seven.

On August 27, 1945, the mother made another deed of lot 5 to defendant and plaintiff. This deed was filed for record, apparently by defendant, on August 6, 1946. By written contract dated August 3, 1946, defendant agreed to sell lot 5 to one Calhoun for $5500 which defendant received—$500 on August 3 and $5000 when deed was delivered to Calhoun about October 2, 1946. In the meantime, on April 6, 1945, defendant had sold the mission property, owned by plaintiff and defendant, to one Van Hale for $800 paid to defendant. Out of the $5500 received by defendant from Calhoun, he paid plaintiff $3000.

.. Plaintiff brought this action in July 1948 to require defendant to account for the rest of the $5500 ($2500) received by him from the sale of lot 5 to Calhoun and half the $800 paid defendant for the sale of the mission property. Plaintiff claims that at the time of the sale to Calhoun she owned lot 5 under the deed made to her on November 8, 1944, and that the subsequent deed of this lot to defendant and plaintiff was therefore of no effect. Defendant maintains, however, the earlier deed to plaintiff was never delivered and that the parties hereto each owned an undivided half interest in lot 5 under the subsequent deed made to them by the mother on August 27, 1945.

The trial court found plaintiff was the owner of lot 5 at the time it was sold to Calhoun and required defendant to account to plaintiff substantially as asked by her.

The principal question presented to us is whether the deed to plaintiff of lot 5 made on November 8, 1944, was delivered.

The three deeds dated November 8 were signed and acknowledged by the parents at the family home before a notary named Hutchins, an acquaintance of twenty-five years, who was in the insurance and real estate business. Hutchins testifies the father, mother, plaintiff and defendant were all present:

"They said they were making, as I remember, a distribution of the property. Mr. Hilliard was quite ill, and they wanted to get it fixed up before his passing on.

"Q. Did they tell you how they were dividing up the property? A. Well, yes, they told me how the deeds were to be. The property lying just east of their residence was to be for Helen [plaintiff] and the other two properties * * * was to be for Farnum [defendant] as I remember it. Then there was another property * * * that was deeded jointly to the two children * * * the mission property. * * * I took the acknowledgments to the three deeds."

As a witness plaintiff says:

"We talked it over, and my father told me he would have Mr. Hutchins there to make up deeds so the places would be all settled and there would be no dispute of it afterwards. * * * It had been talked over before. I was to get the east property. Farnum was to get the home place * * *. The mission property was to go to both of us. I had always known that. * * * Q. Were you given the deed to the east property? A. Personally, just handed to me? Q. Yes, sure? A. Well, yes. Q. Was your brother given the deed to the other property? A. They were all divided, yes. My father had a lockbox and he wanted them put in that. There was talk there about these deeds being put in my father's lockbox until the death of the survivor of my father and mother. I handed my deed back for that purpose. The deeds were all put in the lockbox. * * * It was said there that my folks were to have the income from the property as long as they lived. * * * At the time these deeds were acknowledged by Mr. Hutchins, I testified my deed was handed to me and then I handed it back."

Subject to plaintiff's objection that he was an incompetent witness under the dead man statute, section 622.4, Code, 1946, defendant testified plaintiff was not present on November 8 when his mother made the deed to her of lot 5 and that he placed that deed in a portable lockbox of his mother's at her request. The objection to the competency of defendant as a witness was not good because plaintiff was not entitled to the

1398

protection of section 622.4. Benson v. Custer, 236 Iowa 345, 352, 353, 17 N.W. 2d 889, 893. What eventually happened to the deed or to the lockbox does not appear.

After the father died on November 10, 1944, defendant, with the consent of plaintiff and the mother, looked after, and collected rentals from, the different properties. The mother seems to have exercised no control over them.

Plaintiff testifies her mother or brother never told her and she had no knowledge of the subsequent deed of lot 5 to her and defendant jointly at the time of the sale to Calhoun. Defendant says, however, he told plaintiff "the deed was made out to her and me." Plaintiff also testifies, and it not disputed, that at the time this second deed was made "mother couldn't remember anything and she was very, very—just kind of feeble. * * * She was very forgetful and had been that way for two or three years." As indicated, defendant and his mother lived alone together after the father's death.

It seems to be conceded the mother was to have the income from the properties as long as she lived. Before the sale to Calhoun lot 5 was rented for $35 a month. Plaintiff consented that $595 be deducted from the proceeds of that sale as reimbursement for the loss of rent at $35 per month for the seventeen months the mother lived after the sale to Calhoun. This credit and the expense incurred by defendant in making the sale were allowed defendant in the decree.

While our review of the case is de novo, we are justified in giving considerable weight to the findings and decree of the trial court upon the conflicting testimony. Thompson v. Thompson, 240 Iowa 1162, 1170, 1171, 39 N.W. 2d 132, 137, and citations.

We have repeatedly held and it is the law generally that the intent of the grantor is the controlling element in the delivery of a deed. Thompson v. Thompson, supra; Dyson v. Dyson, 237 Iowa 1285, 25 N.W. 2d 259; Ferrell v. Stinson, 233 Iowa 1331, 1336, 11 N.W. 2d 701, 704, and citations; 16 Am. Jur., Deeds, section 115. In Collins v. Smith, 144 Iowa 200, 203, 122 N.W. 839, 840, we say:

"Delivery is largely a question of intent; and, if from all the circumstances it appears that the grantor intended by his acts to pass present title, there may be a sufficient delivery, although grantees have never had manual possession of the deed. If it were intended to pass title, and all parties so treated it, the delivery was sufficient."

Collins v. Smith, supra, has been cited with approval several times and as recently as Dyson v. Dyson, supra, 237 Iowa 1285, 1288, 25 N.W. 2d 259, 261. In 26 C. J. S., Deeds, section 41, page 236, it is said, "* * * it is sufficient if it is apparent either from the words or acts of the grantor that it was his intention to treat the deed as his and to make a delivery of the same." To much the same effect are Dean v. Sargent, 234 Iowa 176, 185, 12 N.W. 2d 249, 253, and citations.

We think the finding is justified that the mother and father intended an effective delivery of these deeds, subject to the right of the survivor to receive the income for life. Reservation of the income was wholly unnecessary unless a present transfer of title was intended.

The trial court evidently believed that when these deeds were executed on November 8, 1944, the deed to lot 5, owned by the mother, was handed to plaintiff, examined by her and then handed by plaintiff to her father to be kept in his lockbox until the death of the surviving parent. The same disposition was made of the other two deeds under which defendant has claimed ownership. We are not prepared to hold these are not the facts nor that they do not constitute sufficient manual delivery of the deed of lot 5 to plaintiff.

It was perfectly natural for plaintiff to entrust her deed to her father to be placed in his lockbox and for the father to desire the deeds placed there, especially since it was understood the surviving parent was to have the income from the property for life. It does not appear the mother had access to the father's box. If such were the fact it would not invalidate a previously completed delivery. Gruber v. Palmer, 230 Iowa 587, 590, 298 N.W. 926, 927, and citations.

We have frequently held an effective delivery may be made by placing the deed in the hands of a third person without

reserving the right to recall it and with instructions to deliver to the grantee after the grantor's death. The effect of thus placing the instrument with a third person is to reserve a life estate to the grantor with title immediately passing to the grantee but with the latter's right to possession and enjoyment postponed until the grantor's death. See Bohle v. Brooks, 225 Iowa 980, 985, 282 N.W. 351, and citations; In re Estate of Bell, 150 Iowa 725, 728, 729, 130 N.W. 798; Criswell v. Criswell, 138 Iowa 607, 116 N.W. 713; Albrecht v. Albrecht, 121 Iowa 521, 96 N.W. 1087.

The making of the three deeds on November 8 was the culmination of a plan of the father and mother, with the apparent approval of the son and daughter, to distribute their real estate between them in a manner they believed was equitable. It may well be that the father would not have conveyed to defendant lot 6 (on which two residences were located) except with the understanding plaintiff was to have lot 5. To permit the plan of the parents to be frustrated after the death of both would defeat their intent.

Ferrell v. Stinson, supra, 233 Iowa 1331, 1338, 11 N.W. 2d 701, 705, is directly applicable here. We there said:

"Where there is a good-faith voluntary conveyance to those who naturally have a claim upon the grantor's bounty, courts of equity are strongly inclined to uphold the deed * * *. There is in such a case a high degree of mutual confidence between the parties. In this class of cases courts of equity do not put so much importance in the mere manual possession of the deed as in the intent of the grantor. If his intent to pass title presently to the grantee is satisfactorily shown, equity usually sustains such a conveyance, even where the grantor retained manual possession of the deed. [Citations.]"

Ferrell v. Stinson, supra, is cited with approval in Dyson v. Dyson, supra, 237 Iowa 1285, 1288, 25 N.W. 2d 259, 261. See also 30 Iowa L. Rev. 108, heretofore cited in Gilmer v. Neuenswander, 238 Iowa 502, 507, 28 N.W. 2d 43, 46; 26 C. J. S., Deeds, section 42a, page 239; 16 Am. Jur., Deeds, section 151; annotation 129 A. L. R. 11, 40, 41.

The mission property was sold in April 1945 at defendant's suggestion, after consulting plaintiff. Defendant does not contend plaintiff did not then own an undivided half interest in that property. Unless there was a valid delivery of the deed to the mission property from the mother to plaintiff and defendant on November 8, neither party hereto owned any interest therein or had any right to sell it while the mother lived.

Defendant claims to own lot 6 under the deed from his father on November 8. Unless there was a valid delivery of that deed plaintiff now owns an undivided half interest in that parcel. There is not sufficient basis for a finding that the deed to the mission property or the deed to lot 6 was delivered but there was no delivery of the deed from the mother to plaintiff of lot 5. If the deed to lot 5 was not delivered there was no delivery of the other two deeds under which defendant has claimed.

Defendant contends there should have been allowed as an offset against plaintiff's claim certain amounts he says he expended for the care and support of his mother and for her funeral expenses. It is sufficient answer to this contention that no such issue was raised by the pleadings in the court below and defendant is not entitled to have it considered here. Nissen v. Nissen Trampoline Co., 241 Iowa ..., 39 N.W. 2d 92, 98, and citations; First National Bank v. Beier, 238 Iowa 280, 283, 26 N.W. 2d 853, 854; Lamble v. Schreiber, 236 Iowa 597, 599, 19 N.W. 2d 669, 671; Leonard v. Leonard, 234 Iowa 421, 429, 12 N.W. 2d 899, 903.—Affirmed.

All JUSTICES concur.