**Niles KAISER, Appellee,**

v.

**James R. STATHAS, Appellant.**

**No. 58082.**

Supreme Court of Iowa.

March 22, 1978.

Fuerste, Carew & Coyle, Dubuque, for appellant.

Reynolds, Kenline, Breitbach, McCarthy & Clemens, Dubuque, for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REYNOLDSON, JJ.

MASON, Justice.

This court granted the application of plaintiff, Niles Kaiser, for review of the decision of the Court of Appeals reversing the trial court's order granting plaintiff's motion for new trial and remanding the case back to the trial court for reinstatement of the jury verdict.

Kaiser had instituted a law action in the Dubuque District Court claiming relief for personal injuries sustained as a result of an automobile accident. Trial to a jury resulted in a plaintiff's verdict for $7500. After judgment was entered for that amount plaintiff filed a motion for new trial which was granted by the court. Defendant, James R. Stathas, appealed. As stated, the Court of Appeals reversed and remanded the action for reinstatement of the jury verdict.

The only issue for review is whether the trial court abused its discretion in granting plaintiff a new trial. In his motion for new trial plaintiff alleged the following grounds which he claimed materially affected his substantial rights:

"(1) The verdict was inadequate, appearing to be influenced by passion and prejudice.

"(2) The verdict was inequitable and could only have resulted by the failure of the jury to consider and respond to the undisputed facts in the record, and the court's instructions."

The trial court granted a new trial upon both grounds.

The Court of Appeals considered the case and reversed with one judge dissenting. The majority found the case contained factual issues which were decided by the jury and there was substantial evidence to support the jury's determination of those facts. It held the trial court abused its discretion in granting a new trial where such circumstances existed.

In a case involving the granting or denial of a motion for new trial where it is alleged the verdict was too large or too small, precedents are of little value. Each case must be decided by relating its own unique circumstances to certain well-established principles. *Moore v. Bailey*, 163 N.W.2d 435, 436 (Iowa 1968).

February 9, 1972, while plaintiff was engaged in a conversation with a female acquaintance in his properly parked automobile, it was struck from behind by an automobile driven by defendant. At the moment of impact, plaintiff was slumped down behind the steering wheel with his right knee clasped in his hands. The impact is alleged to have thrown him forward causing his knee to strike the metal dashboard of his 1963 automobile.

Plaintiff emerged from the automobile after the crash and inspected the condition of the damaged automobile and the surface of the road. Meanwhile, his companion left the scene to summon the police. When the police arrived, plaintiff spoke with them in their vehicle. He complained of pain in his neck and lower back area. He told the police a friend of his would drive him to the hospital.

During the trip to the hospital plaintiff complained of pain in his knee. At the hospital X-rays were taken which showed a straightening of the cervical spine, indicating the presence of a muscle spasm in the area and an acute cervical sprain. Plaintiff remained in the hospital for seven days. During his stay he was not allowed to sit up or leave his bed except for physical therapy treatments.

Upon his release from the hospital, plaintiff went to Drs. Piasecki and Pearson, orthopedists, to whom he was referred by his attending physician at the hospital. Dr. Piasecki prescribed exercises for his knee and told plaintiff to buy and wear a back brace. Dr. Pearson apparently handled the remainder of plaintiff's visits to the doctors' office.

April 6 Dr. Pearson observed plaintiff to have a muscle spasm in the lumbar spine area. He determined plaintiff's neck had no particular abnormalities and found his neurological examination to be entirely normal. He did not recall plaintiff complaining of pain in his knee but when reminded he had ordered X-rays of the knee that day, he stated he would not have ordered the X-rays unless there was pain in the knee.

The X-rays revealed plaintiff had a fragment of bone at the attachment of his patella tendon to the tibia. Apparently this problem existed prior to the accident and had been caused by the Osgood-Schlatter's

disease from which plaintiff had suffered in his youth. Dr. Pearson opined a blow to the knee such as plaintiff alleged to have occurred could have caused the fragment to become symptomatic. Plaintiff did not wish to have the fragment removed until some time during the summer because he wished to finish the semester at school.

In June plaintiff returned to work. June 17 he returned to Dr. Pearson complaining of pain in both knees. July 18 he was admitted to the hospital and the fragment was removed. Twelve weeks later he returned to work at his old job for one month. He then took a new job but several months later in March of 1973 he quit this job for personal reasons.

From October 1972 to January 1973 plaintiff visited Dr. Pearson each month and complained of pain in his lower back. Dr. Pearson felt this pain was caused by aggravation to the back from too much stooping and bending by plaintiff while he worked.

At trial plaintiff testified he had been engaging in three to four hours of exercises each day, two hours in the morning and two hours in the evening, in an attempt to bring his body back to its physical condition existing prior to the accident. At each session one-half hour of exercise time was devoted to the exercises prescribed by Dr. Piasecki. These exercises consisted of situps, knee bends, toe touching, and side bends. The other exercises which plaintiff performed on his own consisted of bench pressing 100 pounds to develop his biceps and triceps, running in place, jumping jacks, and squat thrusts.

April 24, 1973, while plaintiff was attending a college baseball game he retrieved a ball that had landed under the bleachers. when he emerged from under the bleachers he could not stand up. He was taken to the hospital and treated there by Dr. Pearson for three weeks. He was given physical therapy and shock treatments. Dr. Pearson thought plaintiff might be suffering from a protrusion of the lumbar disk so he had plaintiff undergo a spinal myleogram procedure. The results were negative but to be sure Dr. Pearson arranged for further tests to be conducted at the University of Iowa hospitals. These tests were also negative.

Dr. Pearson felt plaintiff would eventually be free from lower back pain. He felt the original injury to the back could make plaintiff more susceptible to injury in that area. He explained plaintiff might still suffer pain in his knee because a blow to the knee may have softened the cartilage in the area.

At trial plaintiff presented evidence as to the following losses: $614.60 for hospitalization due to his neck injury; $703.50 for hospitalization and medical services on his knee surgery; $1,571.70 for hospitalization, medical services and a back brace by reason of his back injury; $3,917.65 lost wages because of his neck injury; $2,765.45 lost wages from his knee surgery; $305.00 loss on his car; and $2,000 additional expense in completing his college education. If the jury had awarded damages for all these claims, plaintiff would have received a verdict for $11,877.90. Such a verdict would not include any award for pain and suffering such as plaintiff had alleged in his petition. Plaintiff had offered his own testimony on this element of damage.

The only evidence offered by the defense was the testimony of defendant relative to his whereabouts and the events leading up to the collision.

In *Householder v. Town of Clayton*, 221 N.W.2d 488, 492–493 (Iowa 1974), plaintiffs' motion for new trial was predicated on the ground the award of the jury was inadequate. In reversing the trial court for failure to grant the motion this court said:

"The inadequacy of damages may be cause for setting aside a jury verdict and granting a new trial in a proper case. * * [citing authorities].

"The trial court has considerable discretion in ruling on a motion for new trial on the ground of the inadequacy of a verdict. Whether damages are so inadequate as to warrant a new trial is usually left for the trial court to decide, and its discretion in granting or refusing to grant a new trial will not ordinarily be disturbed on appeal

unless an abuse of discretion is shown. * * [citing authorities].

"The question as to whether damages awarded in a given case are inadequate must be determined on the peculiar facts of that case. * * * [citing authority]. The comparison of damages awarded in a given case with awards of damages in other cases is not a satisfactory procedure for determining adequacy. * * * [citing authorities].

"Courts have devised various tests for determining adequacy in the usual case. Generally, damages should be commensurate with the injury, and be sufficient to right the wrong done to the injured party. * * * [citing authority].

"The test of adequacy is for the court to determine what will fairly and reasonably compensate an injured party for the injury sustained. * * * [citing authority]."

■ Defendant concedes in written argument that trial courts have considerable discretion in the matter of whether to afford an aggrieved litigant a new trial but maintains it is an equally well-established principle of law that new trials are not to be granted by trial courts to successful plaintiff litigants simply because the trial court had it been the trier of fact would have afforded greater damages. Defendant contends the question to be decided by the trial court in such regard is whether there is any reasonable basis in the record for the jury returning the amount of verdict it did under the court's correct instructions of law.

In support of his position defendant relies upon *Lappe v. Blocker*, 220 N.W.2d 570 (Iowa 1974), where this court reversed the trial court for having granted plaintiffs' motion for new trial. The court in *Lappe*, after pointing out that the trial court has broad but not unlimited discretion to determine whether a verdict effects substantial justice between the parties, stressed the fact the discretion so accorded must have some support in the record. In reaching the determination a new trial was not warranted the court said at 220 N.W.2d 573:

"With particular reference to new-trial grants based on divergent judge-jury views of the facts, this court said the following in *Lantz v. Cook*, 256 Iowa 409, 413, 127 N.W.2d 675, 677:

"In jury trials controverted issues of fact are for the jury to decide. That is what juries are for. To hold that a judge should set aside a verdict just because he would have reached a different conclusion would substitute judges for juries. It would relegate juries to unimportant window dressing. That we cannot do. . . .

" * * *

"In similar vein, we said this in *Northrup v. Miles Homes, Inc.*, 204 N.W.2d 850, 861 (Iowa):

"Where, as here, the disputes are principally factual, and there is substantial evidence to support the jury's determination of these facts, the judge should not grant a new trial merely because reasonable men might disagree with the jury's conclusion.

"The courts in general hold that when a verdict is amply supported by evidence, a trial court abuses its discretion by granting a new trial on the ground that it would have reached a different result. * * * [citing authorities]."

Although there is no serious question as to defendant's negligence being the proximate cause of the collision with plaintiff's car, the record before us does contain a number of factual issues which the jury had to decide in reaching its verdict. Of course, the jury had to decide whether the various items of damages complained of were proximately sustained as a result of defendant's negligence as the court instructed. Thus, it had to determine from the evidence whether any portion of the damages claimed by plaintiff for his knee problems in a total amount of $3468.95 ($703.50 hospital and medical expenses; $2765.45 lost wages) was due to any physical ailment or disability which may have been caused by the Osgood-Schlatter's disease from which plaintiff had suffered in his youth or what portion, if any, of the damages sustained was due to any disability or physical ail-

ment caused by this condition being aggravated and made active by the accident.

The jury had to decide if part of plaintiff's back problem for which he claimed $1571.70 for hospital and medical expenses and cost of back brace was caused by his exercise regimen or by bending and stooping at his job. The jury also had to determine if plaintiff's failure to complete his college education at the time originally planned was proximately caused by his injuries or was due to other causes in light of the evidence presented. If it determined the delay was due to injuries sustained as a result of the accident the jury was then required to decide whether plaintiff suffered damages by reason of this delay and the amount thereof not to exceed $2000.

While the jury as the trier of fact is not warranted in arbitrarily or capriciously rejecting the testimony of a witness, neither is it required to accept and give effect to testimony which it finds to be unreliable, although it may be uncontradicted. Testimony may be unimpeached by any direct evidence to the contrary and yet be so contrary to natural laws, inherently improbable or unreasonable, opposed to common knowledge, inconsistent with other circumstances established in evidence, or so contradictory within itself, as to be subject to rejection by the court or by the jury as trier of the facts. *Kindred v. Crosby*, 251 Iowa 198, 202, 100 N.W.2d 20, 23.

This court has also said: "The court is not required to accept as a verity uncontradicted testimony, but might well scrutinize closely such testimony as to its credibility, taking into consideration all the circumstances throwing light thereon, such as the interest of the witnesses, remote or otherwise." *Gregory v. Gregory*, 248 Iowa 672, 682, 82 N.W.2d 144, 150. See also *Gilmer v. Neuenswander*, 238 Iowa 502, 507, 28 N.W.2d 43, 46.

We point out that in the case before us there is no claim of misconduct of counsel or jurors. Neither side took any exceptions or made any objections to the instructions of the court as given.

The trial court granted· plaintiff's motion on the basis of passion and prejudice of the jury and on the basis the jury did not consider and respond to the undisputed facts in the record and the court's instructions.

There was no evidence here of any passion or prejudice by the jury. During the course of trial very few objections were made to the evidence. There were no extended heated arguments between the attorneys. Nothing occurred which could ignite any passion or prejudice of the jury.

The court instructed the jury to give the testimony of each witness the weight and credibility to which they believed it was entitled. (Instruction 4). The jury was instructed to determine whether defendant's negligence was the proximate cause of plaintiff's injuries. (Instruction 8). The jury was to determine whether plaintiff's knee problems were dormant before the accident and made active by it. If they were not made active by it, plaintiff was not to recover those expenses related to his knee. (Instruction 15). It was to decide the reasonable value of the medical and hospital services rendered and of the work time lost. (Instruction 16). It was instructed it was plaintiff's duty to make use of every reasonable means to effect as speedy and complete a cure of his injuries as would a reasonably prudent person. (Instruction 17).

There is nothing to show the jury did not consider and respond to each of these instructions and to the others given. It appears very probable they responded in such a way as to find against plaintiff on many of the fact issues of the case.

The evidence in the record made by plaintiff was not undisputed. Plaintiff himself raised serious questions as to whether his injuries and consequent expenses were all proximately caused by the accident. Plaintiff's testimony revealed he may have brought on much of his own pain and suffering. The testimony of plaintiff's doctor in his deposition left little doubt plaintiff's future pain and suffering would be minimal at most.

According to our calculation plaintiff's hospital and doctor bills plus damage to his automobile total $3194.80. This means the jury awarded plaintiff something over $4300 for loss of wages, pain and suffering and for the delay in graduating. Although the evidence would have warranted a larger verdict we cannot say the verdict failed to administer substantial justice between the parties because of the inadequacy of the amount awarded.

There was no sound legal basis for the trial court's granting of plaintiff's motion for new trial; the court abused its discretion in granting the motion.

The decision of the Court of Appeals reversing and remanding the case for reinstatement of the jury verdict is—Affirmed.