GEORGE E. RICKER & others *vs.* CLARA E. BROWN.

Middlesex.    December 4, 1902. — May 23, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Deed*, Construction.

A man eighty years of age having real estate worth about $6,000, conveyed by deed to his housekeeper, in consideration of her past and future services, " all the residue of my property real and personal that has not otherwise been signed to her for like services, which may be remaining in my name and ownership at time of my death." *Held*, that the deed was good as a covenant on the part of the grantor to stand seised of the real estate belonging to him at the time of its execution, to his own use for life, or to the use of such persons as during his life he might appoint, and after his death to the use of the grantee in fee, except so far as the power to shift the use should have been exercised.

BILL IN EQUITY, filed March 2, 1900, by the son and grandchildren of William Ricker, deceased, being his only heirs at

law, to set aside an instrument executed and delivered by Ricker in his lifetime to the defendant, purporting to convey to her certain parcels of real estate worth $6,000 or more, as well as certain personal property, all alleged to be in the possession of the defendant claiming them under the instrument named.

The instrument was as follows :

" Know all men by these presents that I, William Ricker, of Wakefield, County of Middlesex, Commonwealth of Massachusetts, in consideration of one dollar and services rendered in my latter days (care, attention, time, trouble, etc.) paid by Clara Eliza Brown, residing in Wakefield, County of Middlesex, Commonwealth of Massachusetts, the receipt whereof is hereby acknowledged do hereby give, grant, bargain, sell and convey unto the said Clara Eliza Brown (nee) all the residue of my property real and personal that has not otherwise been signed to her for like services, which may be remaining in my name and ownership at time of my death, the aforesaid services including the care and attention to my burial and the payment by her of my funeral expenses. In evidence of this conveyance I hereby acknowledge that I have received a receipt from her in full payment of said services, for which this conveyance is made, her services to me being more valuable than the amount of my possessions.

" To have and to hold the granted premises, with all the privileges and appurtenances thereto belonging to the said Clara Eliza Brown and her heirs and assigns, to their own use and behoof forever. And I hereby for myself and my heirs, executors and administrators, covenant with the grantee and her heirs and assigns that I am lawfully seized in fee simple of the granted premises, that they are free from all incumbrances that I have good right to sell and convey the same as aforesaid, and that I will and my heirs, executors, and administrators shall warrant and defend the same to the grantee and her heirs and assigns forever against the lawful claims and demands of all persons.

" In witness whereof, I the said William Ricker being unmarried, hereunto set my hand and seal this seventh day of December in the year one thousand eight hundred and ninety-eight. William Ricker [seal]. Signed, sealed and delivered in presence of J. Arthur Newhall, Lillian Newhall."

Here followed an acknowledgment in the usual form, and a memorandum of the book and page of the recording.

The defendant demurred to the bill. The Superior Court overruled the demurrer, and the defendant appealed from the interlocutory decree. The defendant then filed an answer on which the plaintiff joined issue, and the case was heard. The Superior Court made a decree declaring the deed from William Ricker to the defendant to be null and void as a conveyance of real estate, without prejudice to the right of the defendant to use the instrument as evidence of an agreement for compensation to be given to her by William Ricker for services rendered or to be rendered by her. The defendant appealed.

*J. S. Patton,* for the defendant.

*S. K. Hamilton & T. Eaton,* for the plaintiffs.

HAMMOND, J. At the close of the trial the plaintiffs did not contend that the instrument under which the defendant claims was void by reason of undue influence, want of consideration or lack of capacity in the grantor, but rested their case upon the contention that " as matter of law, it could not operate as a deed of real estate or pass any actual title to the properties in question." We have then an instrument under seal, voluntarily executed upon a valid consideration by a grantor of legal capacity, properly acknowledged, duly delivered to the grantee, and recorded six months afterwards in the registry of deeds ; and the question is whether the instrument, in the light of the circumstances disclosed in this case, constitutes a bar to this bill.

The grantor at the time of its execution was eighty years of age. The defendant had been his housekeeper for several years. It appears by the instrument that for the care and attention which he had received at her hands he was very grateful, and it may fairly be inferred that he desired and expected her to continue with him to the end, for, although possessing at the time the deed was executed real estate to the value of " six thousand dollars or more," he pathetically describes her services as " being more valuable than the amount of my possessions." He has concluded to put something in writing. He adopts the form of a deed. He already has, or thinks he has, " signed " to her for her services some of his property, and he is willing to make further compensation for what she has already done, as well as

to settle upon what she is to receive for future services, " in-cluding the care and attention to my burial and the payment by her of my funeral expenses." He is satisfied that she shall have all of his property remaining at his death. His sole thought is to be secure of her care and attention until that time, and to provide for his burial and funeral expenses. The matter of the conveyance has evidently been the subject of conversation be-tween them, for he acknowledges that he has received a receipt from her in full payment of her " said services," meaning thereby those thereafter to be rendered as well as those which had been theretofore rendered.

There can be no doubt as to his intention. The language of the grant is " all the residue of my property real and personal that has not otherwise been signed to her for like services, which may be remaining in my name and ownership at time of my death." It will be noted that the term " residue " does not mean what shall remain at his death, but means what had not theretofore been conveyed to the grantee, or, in other words, it means what property he had at the time of the execution of the deed. The effect therefore is the same as though he had said " all of my present property real and personal which may be remaining," etc. It is plain that he intended to have the prop-erty during his life and to retain the right to dispose of such portion during his life as he saw fit, and that at his death the balance should go to her in fee simple; and he intended to secure to her irrevocably by this deed her rights under that agreement. This intention was carried out with all the solem-nity and deliberation of a deed, and all the formalities required in the execution and acknowledgment for its registration were duly observed. The instrument had reference to his care for the remainder of his life, a subject upon which it may be presumed he was solicitous.

This intention relating to a subject so important to him at his advanced age, expressed so deliberately in a solemn deed, should be carried out if it can be done consistently with the rules of law. It is the duty of the courts to give effect to the deed, if possible, rather than to declare it null and void. If there had not been reserved a power to dispose of the property during the lifetime of the grantee, there would have been no difficulty. It

is held in this State that although a freehold estate cannot be created to commence *in futuro* yet that where the grantor is to have a life estate the deed may take effect as a covenant to stand seised to the use of the grantor for his life, and after his decease to the use of the grantee and his heirs, the latter use by operation of the statute of uses becoming on the death of the grantor a legal estate in fee in the grantee. *Wallis* v. *Wallis*, 4 Mass. 135. *Parker* v. *Nichols*, 7 Pick. 111. *West* v. *West*, 155 Mass. 317. And, whatever may be the rule in England and elsewhere, it is not necessary in this State that there should be any relationship by blood or marriage between the grantor and grantee. *Trafton* v. *Hawes*, 102 Mass. 533.

We do not think that the existence of the power to dispose of the property prevents the application of the principle. Before the statute a use was a purely equitable interest, and might be raised after a limitation in fee or it might be created " *in futuro* " without any preceding limitation, or the order of priority might be changed by shifting uses or by powers; or a power of revocation might be reserved to the grantor or a stranger to recall and change the uses. 4 Kent Com. 293, and cases cited in the notes. The common purpose of a shifting use is to have an estate take effect in derogation of some other estate, and such uses are common in marriage settlements in England and in this country. Thus, if an estate be limited to A. and his heirs, with a proviso that, if B. pay to A. $100 within a given time, the use of A. shall cease and the estate go to B. in fee, the estate is vested in A. subject to a shifting use in fee in B. So if the proviso be that C. may revoke the use to A. and limit it to B., then A. is seised in fee with a power in C. of revocation and limitation of a new use. 4 Kent Com. 296, 297, and cases cited in the notes.

Applying these principles to the deed in question, we think that the intention of the grantor so far as respects real estate may be carried out consistently with the principles of law. So far as respects real estate, the deed may be regarded as a covenant on the part of the grantor to stand seised of the real estate belonging to him at the time of its execution to his own use for life and after his death to the use of the grantee in fee, with a right in him to defeat the use to the grantee in any or all the

estate by an appointment made during his lifetime to the use of another. Stated in another way, it is a covenant to stand seised to his own use for life, or to the use of such persons as during his life he may appoint, and after his death to the use of the grantee in fee, except so far as the power to shift the use be exercised.

All of the real estate described in the bill was owned by the grantor at the time of the execution of the deed, and at his death. It follows that by the deed an estate passed to the grantee which upon the death of the grantor became a legal estate in fee. For analogous cases as to trusts, see *Kent* v. *Morrison*, 153 Mass. 137 ; *Collins* v. *Wickwire*, 162 Mass. 143, and cases cited.

Upon this interpretation of the deed it was not a testamentary instrument. It took effect at the time of its execution, and the grantee holds under the right acquired at that time.

*Bill dismissed.*