Mrs. Merle Browne, Appellant, v. A. B. Johnson et al., Appellees.

No. 41673.

June 23, 1934.

R. E. Farrand and C. A. Robbins, for appellant.

Percival & Wilkinson, for appellees.

EVANS, J.—The two deeds in question were executed, one on December 30, 1921, and the other on July 28, 1922. The grantor in each deed was Mary J. Johnson, and the grantee was her husband A. B. Johnson, defendant herein. Mary J. Johnson died in August, 1925. Immediately following her death, and not before, the deeds were duly recorded. This action was begun in the district court on January 26, 1931. The plaintiff was the daughter of the sister of Mary J. Johnson, grantor in the deeds. She sustained no other relation to the transaction or to the parties. The grounds of her attack upon the conveyances, broadly stated, are: That there was no consideration; that there was undue influence; that there was in fact no delivery. Her petition also charged mental incapacity of the grantor. However, upon the submission here, she withdraws the charge of mental incapacity, but contends for a weakened capacity of the grantor whereby the grantee was able to dominate her, and that he obtained the deeds in violation of the fiduciary relation which he sustained to the grantor. It appears that the real estate involved in the controversy comprised about five or six hundred acres, and that this acreage comprised the farm upon which the husband and wife had lived. The first land acquired by these parties was a tract of 80 acres donated to them by Reuben Foster, the father of Mary J. Johnson. It was conveyed to them jointly. Subsequent acquisitions of additional acreage were likewise taken in the name of both parties jointly. The last 280 acres acquired by them was taken and held in the name of the husband, A. B. Johnson. Mr. and Mrs. Johnson were married in 1876 and lived together affectionately for 49 years. In 1923 they built a new home in the village of Truro.

Up to that time they had lived throughout their married life upon the farm. In the new home Mrs. Johnson died in August, 1925. She left surviving her neither parents nor children, nor brother nor sister; nor nephew nor niece other than the plaintiff. In other words, the plaintiff was her collateral heir and her sole one. The case, as presented on the record before us, is a fact case. Was there any mental weakness of the grantor or fraud or undue influence on the part of the grantee? We have read the record and find the evidence therein very unsatisfactory as proof of the allegations of the petition. The circumstances proved and relied on impress us as very inconsequential. For illustration we quote the following passages from the appellant's brief:

"In 1915 when Mrs. Johnson was having a conversation with her father she said to him, 'I would like to do something to help Merle (plaintiff) in some way', but also said it was so she couldn't."

"In the summer of 1921 when Fletcher McPherson was in the Johnson home the telephone rang. Mrs. Johnson started to answer the phone and Johnson stopped the conversation he was having with McPherson and said 'I'll answer that, Mary', and did so."

"Three weeks before she went to have the first operation performed she expressed to Mattie L. McPherson her fears that she would never come home and yet she made no deed prior to her going."

"Mrs. Johnson had sold Mrs. Pauline Miller some blackberries and had delivered one quart too much and talked over the phone about sending her husband after them. The parties lived one mile apart. Either Johnson was stubborn and refused to go or she forgot to tell him for the berries remained on the porch until spoiled."

"She went with the Collins people to visit the plaintiff's mother in warm weather and wrapped and bundled herself up and bundled her head up like it was severe winter weather."

"She was met at the church by the witness Foster and his wife, when she wanted to go home could not find her husband and was unable to tell how or with whom she came to the church."

"In 1921 at the funeral of her sister, mother of the appellant, she would cry, moan and grieve when in the room where the corpse and mourners were, when she got into the next room, it was momentary, she changed like a child and assumed the attitude of the people in that room."

"After she moved into the new house she failed to keep the same in order."

The foregoing is fairly illustrative of the great body of appellant's evidence.

■ The claim that there was no proof of delivery is without merit. The deeds were produced by the grantee, and the legal presumption was in his favor. The notary public before whom they were acknowledged was examined as a witness for the plaintiff, but he was not interrogated on the subject of delivery. The deed in the possession of the grantee carried the presumption of delivery. Mills v. Hall, 202 Iowa 340, 209 N. W. 291; Witt v. Witt, 174 Iowa 173, 156 N. W. 321. As proof of nondelivery, reliance is had also upon a certain clause in the deed which provides that it shall not take effect until the death of the grantor. This proviso furnishes no proof of nondelivery. The instrument may be delivered and become effective notwithstanding. Hall v. Hall, 206 Iowa 1, 218 N. W. 35; Shaull v. Shaull, 182 Iowa 770, 166 N. W. 301, 11 A. L. R. 15; Leonard v. Wren, 184 Iowa 1339, 169 N. W. 621. The effect to be given to such a clause in the deed is that it postpones to the grantee the enjoyment of use and possession, and in effect reserves a life estate to the grantor.

■ The plaintiff devotes considerable argument to the proposition that the burden was upon the defendant to negative undue influence. The law does not presumptively look with disfavor upon the influence of affection as between husband and wife. Whether in a case of this kind the burden of disproof of undue influence shifts to the defendant at any stage is a question we need not decide. Taking the record herein as a whole, in all its circumstances, we think it quite abundant to satisfy the impartial mind that the conveyances in question were the free and voluntary acts of the grantor. True the grantee did not testify to any personal transaction or communication with the grantor. But this fact does not operate as a circumstance against him if for no other reason than that he was not competent as a witness to so testify. In the light of the whole record, we are unable to entertain substantial doubt of the correctness of the decree of the district court. It is accordingly affirmed.

All Justices concur.