MARY KLEIN, Appellee, v. A. J. KLEIN et al., Appellants.

No. 46997.

(Reported in 29 N. W. 2d 163)

OCTOBER 14, 1947.

REHEARING DENIED JANUARY 16, 1948.

Fred Lewis, Jr., J. J. Jennings, and Bennett Cullison, all of Harlan, for appellants.

Joe W. Turner, of Avoca, and Hines & Higgins, of Harlan, for appellee.

MANTZ, J.—This is an action to quiet title, brought by Mary Klein against the defendants, who are all the living children of Mary Klein and children of a deceased daughter of Mary Klein, Josephine Book. The plaintiff claimed to be the absolute and unqualified owner of the real estate in question, claiming title under a warranty deed from her husband, John Klein, dated February 5, 1945, and which the said Mary Klein claimed to have been delivered to her upon the date of its execution and remained in her possession and under her control until March 16, 1945, the day following the death of her husband, John Klein, upon which date she had the same recorded in the office of the county recorder.

The only defendants answering were A. J. Klein, also known as Tony Klein, Melvin Book, and Peter Fromm, as guardian of the property of the children of a deceased daughter, Josephine Book, which answers were identical in form. The other children, defendants herein, make no claim to the property involved as against the claim of plaintiff, their mother. These answers specifically deny the allegations of plaintiff's petition, and further allege that the defendants are heirs at law of John Klein, who died intestate on March 15, 1945, and who at the time of his death was the owner of the real estate in question. In substance, said answers allege that prior to his death said John Klein executed an instrument in the form of a deed, and other instruments relating to his property and estate, the exact character and nature of which are unknown to the defendants; that the instruments so executed were never delivered and were not intended to convey a present interest in decedent's property but were executed for a testamentary purpose and ineffective for such purpose; also, that they were secured by undue influence of the plaintiff and other members of the household and therefore void; that by continuing to live in the homestead of decedent and reside thereon she has thereby elected, as his surviving spouse, to use and occupy the homestead for life. The plaintiff by reply denied the affirmative allegations of said answers.

The court held for the plaintiff and entered a decree quieting her title to the real estate. All answering defendants appealed.

After the submission of the case Mary Klein died and her representative has been substituted as appellee herein.

I. Before taking up the various issues and points raised in this appeal, we think it will be helpful to set out various facts and circumstances appearing in the record.

John Klein and Mary Klein had been married for over forty-five years and had at all times lived on a farm in Shelby County, Iowa. John Klein died March 15, 1945. Mary Klein was sixty-nine years old in 1946. Her husband was some years older. They had nine children, eight of whom, adults, were living at that time. One daughter, Josephine Book, died before John Klein and left nine children surviving her, one of whom,

Melvin Book, is an adult, and the others are minors, all represented by their guardian, Peter Fromm.

In the fall of 1944 John Klein owned approximately a section of land located in Shelby County, Iowa. Of this tract one farm of two hundred fourteen acres was located about one-half mile from the farm home of John and Mary and it had been occupied by the oldest son, Tony, as a tenant, for nineteen years. In the fall of 1944 John Klein desired to sell the two-hundred-fourteen-acre farm and offered to sell the same to Tony. The latter stated that he did not care to buy. Shortly thereafter, and on October 2, 1944, John Klein sold the two hundred fourteen acres to his son John M. Klein, then thirty years old, who was unmarried and lived at home. Another son, Fred Klein, aged twenty-seven, also unmarried, lived at home. In March 1945 Tony had to move from this farm.

The rest of the land belonging to John Klein was something over four hundred acres and is the land in controversy.

The record shows that John Klein was a good manager, was thrifty, and accumulated considerable property. He gave help and aid to his children when they started out for themselves. Aside from his relations with Tony, he was on the best of terms with his children. He and Tony for the most part got along fairly well. Tony drank a lot and his method of farming and treatment of his stock did not suit his father. Tony resented his father's criticism of his farming. Matters got worse after the two hundred fourteen acres were sold. Tony resented its being sold to John, claiming that by selling it to him John was being favored. Following that sale, Tony and his parents, especially his father, did not get along agreeably together. The record shows that up until a short time before John Klein died Tony quarreled with him, abused him, called him insane, and also called him obscene names. Such upset and depressed the father and mother and they told some of the children of Tony's conduct and how it hurt them.

During the last years of his life John Klein's health began to fail. He took medical treatment in a hospital at Rochester, Minnesota; also at Omaha, Nebraska; but his physical condition became progressively worse and he died on March 15, 1945.

The record shows that he was a man of strong will and carried on his business and made his own decisions up until a few days before his death. The record shows that while his son John performed some business matters for him they were always pursuant to his father's instructions.

Before he died John Klein made at least two wills in which he made disposition of his property. The first one, made in the spring of 1944, he later destroyed. In November 1944 he had a will prepared but this was never executed.

Early in February 1945 John Klein went to the office of E. A. Howe, a loan agent for the Harlan Production Credit Association, at Harlan, Iowa. His son John took him to Harlan. He was there three times. On February 5, 1945, John Klein went alone to Howe's office and while there instructed the latter to make a deed to his wife, Mary Klein, conveying to her the land in controversy. It was prepared by Howe, Klein signed, and Howe notarized it. He also had Howe prepare a bill of sale, wherein he transferred to Mary Klein all of his personal property then owned or to be possessed during his natural life. This was signed by Klein and notarized by Howe. The bill of sale contained the following provision:

"John Klein sells to Mary Klein personal property 'now in the possession of myself' described as follows: All personal property of every kind including moneys and credits, bonds and other evidences of cash that I now possess or may become possessed of during my natural life."

Howe placed said instruments in an envelope and gave them to Klein, who took them home with him. The record shows that on the day following the making of the deed and bill of sale John Klein and Mary Klein went to Howe's office. There Mary Klein told Howe that she now owned the property involved and that she wanted him to make out some papers for her. At her direction he made out a deed to the real estate to her children, except Tony Klein and the Book children. She also had him make out a bill of sale to the same parties conveying to them her personal property. This bill of sale recited a consideration of "love and affection" and purports to convey "All personal property of

every kind [and character] including moneys and credits, bonds and other evidences of cash that I now possess or may become possessed of during my natural life." She alone signed both of these instruments. On the same date, February 6, 1945, John Klein and Mary Klein had Howe prepare a statement purporting to be explanatory of the deeds and bills of sale. Such paper is Exhibit 2 and is as follows:

"We, John Klein and Mary Klein, husband and wife, have executed deeds and bill of sale conveying property from John Klein to Mary Klein and she in turn conveying property to our children with the exception of A. J. Klein, a son, and the children of Josephine Book, daughter deceased, these children having been omitted from the conveyances for the reason that they have received from us funds equal to the equal shares that the other children will receive under these deeds and bill of sale. A. J. Klein is further omitted from the conveyance for his mistreatment of us and the disturbance he created in our family home.

"These statements are made for the purpose of explaining just why the above two children were omitted from the conveyance.

"Signed this 6th day of February, 1945.

[Signed] John Klein
[Signed] Mary Klein

"Witnesses
[Signed] Dorothy E. Gillette
[Signed] Elsie Petersen."

The papers executed on February 6, 1945, were not delivered and were placed in the joint safety box of John Klein and Mary Klein at the Harlan bank. Upon demand of appellants they were produced in court. Sometime prior thereto John Klein had gone to this bank and rented a safety box and placed it in his name and that of his wife. He also had his deposit at the bank placed jointly with her. None of the parties makes claim based upon the deed or bill of sale executed February 6, 1945.

Howe was not an attorney. He had known John Klein for many years. He had worked in a bank at Harlan and when the

papers were prepared was working in a credit corporation handling loans, etc.

Appellants direct their attack to the deed of February 5, 1945, and claim that it and the other instruments made on that date and the day following are to be considered in connection with their claim that the whole transaction was intended to be testamentary in character.

II. In this appeal appellants have set forth four propositions, only three of which are argued. Proposition one relates to the delivery of the deed under which appellee claims title.

Proposition two claims that even if there was an actual delivery of the deed, still the parties thereto did not intend it to convey a present title but that it was intended to be testamentary in character.

Proposition three claims that the deed was secured by means of undue influence exercised over grantor by members of his household and persons interested and standing in a relationship of confidence to the grantor.

Proposition four is that as the grantee occupied the homestead after the death of grantor, she is presumed to have elected to take the homestead in lieu of her distributive share.

Propositions one and two for the most part are argued together. Proposition four is not argued.

The trial court decided adversely to appellants on all of these propositions.

III. We will first consider the claim which appellants make that the deed involved was never delivered.

The trial court held that the deed from John Klein to Mary Klein was prepared at the request of John Klein; that he executed the same and thereafter delivered it to the grantee, Mary Klein; that she accepted said deed and kept it in her possession until after John Klein died and then had the same recorded. We concur in the holding of the trial court that there was a valid delivery of the deed. In support thereof, and for rules of law applicable, see Gruber v. Palmer, 230 Iowa 587, 298 N. W. 926; Stickles v. Townsend, 171 Iowa 697, 154 N. W. 307; 16 Am. Jur., Deeds, section 129; Tucker v. Tucker, 138 Iowa 344, 116 N. W. 119, and cases there cited.

■ The deed having been duly executed and recorded, the burden rested upon appellants to show such claimed nondelivery by evidence clear, satisfactory, and convincing. Ferrell v. Stinson, 233 Iowa 1331, 11 N. W. 2d 701; Huxley v. Liess, 226 Iowa 819, 285 N. W. 216; Hodgson v. Dorsey, 230 Iowa 730, 298 N. W. 895, 137 A. L. R. 456; Stonewall v. Danielson, 204 Iowa 1367, 217 N. W. 456.

■ A careful review of the evidence shows that appellants have not sustained this burden. We think that the preponderance of the evidence in regard to such claim shows otherwise. We call attention to the language of the court in Huxley v. Liess, supra. There Bliss, J., speaking for the court, said, at page 823 of 226 Iowa, page 218 of 285 N. W.:

"While recording, in itself, does not constitute delivery, it is evidence of, and creates a presumption of, delivery. This presumption is rebuttable, but it places upon the appellant the burden of proving nondelivery, and this presumption is so strong and persuasive that only clear and satisfactory evidence will overthrow it. Gibson v. Gibson, 205 Iowa 1285, 217 N. W. 852; Robinson v. Gould, 26 Iowa 89; Jones v. Betz, 203 Iowa 767, 210 N. W. 609, 213 N. W. 282; Johnson v. Lavene, 196 Iowa 471, 192 N. W. 885; Davis v. Hall, 128 Iowa 647, 105 N. W. 122; Tucker v. Glew, 158 Iowa 231, 139 N. W. 565; Robertson v. Renshaw, 220 Iowa 572, 261 N. W. 645; Browne v. Johnson, 218 Iowa 498, 255 N. W. 862; Burch v. Nicholson, 157 Iowa 502, 137 N. W. 1066."

The evidence shows that prior to the time the deed was executed John Klein stated that he intended to give his property to his wife. It further shows that before it was made this matter was talked over between them. We can see nothing unusual or unreasonable in John Klein's wanting to handle the matter as he did. For over forty-five years John Klein and Mary Klein had lived out on the farms and worked together in accumulating the property. She had borne him nine children and evidently had been a faithful wife. When her daughter, Josephine Book, died several of the orphaned children were taken into the Klein home and were cared for as long as Mary was able to do so.

In argument appellants cite from the record facts and circumstances which they claim show nondelivery of the deed. They call attention to various parts of the cross-examination of Mary Klein as to what was done with the deed and the purpose of its being made, and that it was but a part of certain transactions which they claim establish their claim that the deed was testamentary in character. In doing so they cite many cases. The rules of law governing such matters are well settled. Within their limits, the facts control. Such legal rules were set forth in the recent case of Dyson v. Dyson, 237 Iowa 1285, 25 N. W. 2d 259. The holding there was referred to and cited with approval in the case of Gilmer v. Neuenswander, 238 Iowa 502, 506, 28 N. W. 2d 43, 45. An examination of the testimony of Mary Klein shows that it was taken at her home, where she was confined by a serious illness which later resulted in her death. She was in a weakened condition and the examination was quite extended and covered forty pages of the record. It dealt with the family relationships, the children, the grandchildren, and the various transactions involving the property. She testified in regard to the various instruments executed in February 1945. There were two deeds and two bills of sale. The last deed and bill of sale were never delivered. These two instruments were found in the joint lockbox following the death of John Klein. Neither of them was signed by him. On cross-examination Mary stated that the deed and bill of sale were put in the box at the Harlan bank. It can fairly be inferred that this testimony referred to the undelivered deed and bill of sale. On the other hand, she testified positively that the deed in question was delivered to her at the home, that she accepted it there and kept it in the house in a lockbox to which she alone had a key, and that following John Klein's death she took it to Harlan and had it recorded. Her testimony in this respect is corroborated by other evidence. No objection was made to the competency of Mary Klein to testify regarding her transactions with the deceased dealing with this matter. Much of it was brought out by appellants in their examination of her.

We concur in the finding of the trial court that the deed of February 5, 1945, was delivered by John Klein to Mary Klein, appellee herein.

IV. Another proposition urged by appellants is that even though it be shown that the deed was actually delivered by John Klein to Mary Klein, still the parties did not intend that it convey a present interest but was intended to be testamentary in character, therefore a will, and, lacking the formalities of an execution of such an instrument, was void. It is their claim that the making of the instruments of February 5th and February 6th was all one transaction intended to be testamentary. In brief and argument the appellants combine the above claim with that of the delivery of the deed. By reason of this combination it is somewhat difficult at times to see the application sought to be made.

This claim of appellants is based largely upon testimony given by Mary Klein in another hearing and relating to the ownership of certain notes, and in said hearing Mary Klein made statements to the effect that she and her husband decided to use the method followed in lieu of a will, thus avoiding probate. This evidence, if of any force, related to a time prior to the making of the deeds and bills of sale. Some point is made as to the nature of the property conveyed, especially by the bill of sale. We do not regard such as controlling. Under our holdings a deed, plain and clear in terms without ambiguity, cannot be impeached in the manner suggested by appellants. Hall v. Hall, 206 Iowa 1, 218 N. W. 35; Shaull v. Shaull, 182 Iowa 770, 166 N. W. 301, 11 A. L. R. 15; Lewis v. Curnutt, 130 Iowa 423, 106 N. W. 914.

Even assuming that the instruments made in February were all a part of one transaction, certainly the appellants, being beneficiaries in none of them, are not in a position to complain. John Klein had a lawful right to convey to his wife. If it was a gift to her, his motive, either good or bad, in so doing, was immaterial. 24 Am. Jur., Gifts, section 49. Property owners have a perfectly legal right to determine the disposition of their property so long as there is no violation of the statute. John Klein granted to Mary Klein all of his property.

The record shows that John Klein conveyed the land absolutely to his wife. The deed was absolute in terms and contains no reservations. It was delivered and necessarily was beyond

recall. The delivery was on the same date it was drawn and it was accepted on the same date. For aught that appears in the record the transactions of the next day were not then contemplated. Very likely he and his wife had at various times discussed the ultimate disposition of the property, but it is unnecessary for us to assume he knew or intended that she would attempt to do it in the particular manner that she did on the next day. It seems to us if that was the plan the conveyances to her on the preceding day were entirely unnecessary.

The grantees of Mary Klein's deed and bill of sale are not complaining and make no claim thereunder to any of her property described in such instruments.

The record shows that John Klein had made prior statements that he intended his wife to have the property. Doubtless he and his wife talked matters over before the deed involved was executed. There would be nothing strange or unusual about this. Many persons do the same thing. Frequently people consider various ways of disposing of their property and no doubt John Klein did this very thing. John Klein had a right to make the deed to his wife and she in turn would have a right to make conveyance to whom she saw fit. Conveyances between husband and wife are permitted. Section 597.4, Code of 1946. We do not think that the validity of the first deed can be impeached by the failure of Mary Klein to complete the deed and bill of sale of February 6th. The deed of February 5, 1945, was absolute in form. It was delivered to the grantee, accepted by her, and acted upon while the grantor was living. He never tried to recall it. His deed granted the title in praesenti to Mary Klein.

In the case of Hall v. Hall, supra, 206 Iowa 1, 2, 218 N. W. 35, this court had before it the question as to whether a deed in ordinary form was a will or whether it conveyed an interest in praesenti. There it was claimed that the deed was testamentary in character. Such deed contained the following: " 'But this deed does not take effect until after .[the] death' " of the grantor, but the grantor did not give up possession and reserved the use and income of the premises as long as he lived. In the cited case, the court, speaking through Albert, J., referred

to many Iowa cases dealing with that subject. The court held the instrument was not testamentary and sustained it as an instrument conveying a present interest.

In the case of Shaull v. Shaull, supra, 182 Iowa 770, 772, 774, 166 N. W. 301, 302, there was before the court the question of whether a deed to certain lands was intended to be testamentary in character and therefore ineffective as a will. Therein the court, through Stevens, J., made an extensive analysis of many of the Iowa cases dealing with that question. In that case there was a warranty deed from a father and wife to a son. Following the description of the land conveyed, the following clause appeared: " 'This deed to take effect immediately upon the death of both the grantors.' " This deed was executed April 17, 1909, and held in escrow until about January 31, 1912, when it was delivered to the grantee. The grantor was living when the deed was delivered. Therein, this court said:

"One rule of construction to be observed is to ascertain and carry out the intention of the grantor, if possible; and if the instrument is without ambiguity, such intention must be gathered therefrom. It is also a familiar rule of construction that effect must be given to all parts of the instrument, if possible." Citing Wilson v. Carter, 132 Iowa 442, 109 N. W. 886; Yeager v. Farnsworth, 163 Iowa 537, 145 N. W. 87.

After an extended review of the cases from this and other jurisdictions on the subject, the court (Shaull v. Shaull, supra) held that the deed conveyed a present interest in the land described and was not void as being testamentary in character.

In the case of Lewis v. Curnutt, supra, the question was whether a certain deed was made and intended to convey a present interest or whether it was invalid as being testamentary in character and lacking the formalities of execution. The grantor made a deed to a trustee and at the same time gave to the trustee by a separate instrument directions as to the disposition of the property after the death of the grantor. After the grantor died the property was sold and one Lewis brought suit to quiet title to the property, claiming the deed was ineffective as being intended to be testamentary in char-

acter. Therein Weaver, J., deals with the rights of an owner of property to dispose of it as he sees fit where no public policy is violated. He discusses the effect of wills and their operation. There he states the rule to be, where a grantor has conveyed property by deed and by reason of delivery it is beyond recall, then the conveyance is effective. In the Lewis case the court held the deed effective and denied its testamentary character. See Saunders v. Saunders, 115 Iowa 275, 88 N. W. 329; Spencer v. Robbins, 106 Ind. 580, 5 N. E. 726; 1 Jones on Real Property, section 527; 28 R. C. L., Wills, section 3; Lorieux v. Keller, 5 (Clarke) Iowa 196, 68 Am. Dec. 696; Burlington University v. Barrett, 22 Iowa 60, 92 Am. Dec. 376; Tuttle v. Raish, 116 Iowa 331, 90 N. W. 66; Ricker v. Brown, 183 Mass. 424, 67 N. E. 353.

V. The third claim urged by appellants is that the deed relied upon by appellee (plaintiff) was obtained as a result of undue influence exercised over the grantor by Mary Klein and other members of the family, and for that reason is invalid.

The deed attacked was one from husband to wife. Section 597.4, Code of 1946, provides:

"Conveyances to each other. A conveyance, transfer, or rien, executed by either husband or wife to or in favor of the other, shall be valid to the same extent as between other persons."

One claiming that a conveyance was the result of undue influence has the burden of so showing. Mallow v. Walker, 115 Iowa 238, 88 N. W. 452, 91 Am. St. Rep. 158; McIntire v. Mc-Conn, 28 Iowa 480; Johnson v. Tyler, 175 Iowa 723, 157 N. W. 184; McNeer v. Beck, 205 Iowa 196, 217 N. W. 825; Goldthorp v. Goldthorp, 115 Iowa 430, 88 N. W. 944.

The fact that there is a family or blood relationship between grantor and the grantee does not raise a presumption that such relationship resulted in such undue influence. Mallow v. Walker, supra; Stiles v. Breed, 151 Iowa 86, 130 N. W. 376; Arndt v. Lapel, 214 Iowa 594, 243 N. W. 605, and cases there cited.

In the case of Arndt v. Lapel, above cited, this court, speaking through Grimm, J., made a very careful and thorough an-

alysis of many of the holdings of this court on the matter of undue influence and the relationships existing at the time of a certain conveyance from a husband to his wife. In that case it was claimed that a fiduciary relationship existed between the husband and wife, and undue influence and nondelivery of the conveyance. There the husband deeded a quarter section of real estate to his wife. In that case, as here, the widow brought action to quiet title. A daughter of grantor, as defendant, set up defenses above set forth. The court in effect held that the burden of showing the confidential relationship existed was cast upon the daughter. Whether or not such relationship existed and whether undue influence resulted therefrom were to be determined from the record. There, as here, the claim was made that in prior wills the grantor had shown an intention to make a different disposition of his property. There also it was shown that at times the best of feeling did not exist between grantor and his daughter. In speaking of the type of man the grantor in that case was, this court said, at page 602 of 214 Iowa, page 609 of 243 N. W.:

"There is nothing in this record to show that the grantor reposed any faith and confidence in the plaintiff, at least to the extent that he sacrificed his own ideas to hers. Whatever may have been his condition in the last few days of his life, at the time he had delirious spells, the fact remains that up to the time of the execution of the deed and for some time thereafter the grantor was a man of positive character, who had definite ideas and apparently found pleasure in expressing them. There is no showing that anyone had taken over his affairs in such a sense as to constitute a confidential relationship. As was said in McNeer v. Beck, 205 Iowa 196, l.c. 198: 'Mere blood relationship does not, of itself, create the legal trust or confidential relationship and change the requirement in the above regard. Kremar v. Kremar, 202 Iowa 1166; Shaffer v. Zubrod, 202 Iowa 1062.' Moreover, the mere fact that the plaintiff and the grantor were wife and husband does not, of itself, create a legal trust or confidential relationship." See Stonewall v. Danielson, supra.

In the cited case the daughter, Ella Lapel, occupied the same relationship as Tony Klein in the instant case. In the later case of Keune v. McCauley, 228 Iowa 607, 616, 293 N. W. 25, 28, a question arose as to the validity of a deed, and again questions were raised as to undue influence, fiduciary relationship, and that the conveyance was testamentary in character in that it was made at a time when the grantor was in a hospital suffering from a malady which caused his death shortly after the conveyance (deed) was made. In that case, Hamilton, J., speaking for the court said:

"Most, if not all, the questions raised by this appeal were involved in the case of Arndt v. Lapel, 214 Iowa 594, 243 N. W. 605, where the legal principles governing such questions are very fully discussed. The law as announced in this case, as we understand, is still the law of this state."

The evidence shows that John Klein was a man of strong will and determination; he discussed business matters with his wife but in the last analysis made his own decisions. As between them and the other members of his family the record shows that he was a dominant character. The record is absolutely barren of any evidence that any of the family tried to dictate to him or to exercise any influence over him which in any degree deprived him of his free agency.

All the evidence indicates a happy family relationship save that with Tony. As a witness Tony was asked on cross-examination to name the one he claimed had exerted undue influence on his father to get the deed from the father to the mother. We set out parts of the record:

"Q. You have stated in an answer that you have filed in this case that undue influence has been exercised on your father, who is it that you claim exercised undue influence on him to get him to make the deed out to your mother? A. Johnny has been running his business down there. Q. Johnny has been running his business down there? A. Yes, he has been doing —he has been etching onto Ma what to do. Q. Etching. You have not been around there to know much what has been going on? A. I have been there, well he has been doing that for the

last five or six years. Q. He has been writing checks? A. Not writing checks much, no. Q. He has been taking care of business matters since your father died? A. No. Q. He has not? A. No, not all of his business. Q. What? A. Not all of his business. Q. Who has been taking care of it when Johnny was not? A. You mean taking care of her [the] business? Q. Since you father died? A. Well, I imagine he was at that time. Q. He has been doing that for her ever since your father died, is that right? A. Yes. Q. Now what business was he doing for her before your father died? A. * * * *he was always coaxing her along.* Q. Coaching her along? A. Yes. Q. Telling her what to do? A. Yes. Q. You think he did that with your father? A. *I don't know whether he did or not.*" (Italics supplied.)

Further Tony testified that he did not know about his father's business affairs for the last year or so but prior to that he always looked after his own business; that his mother might have been taking care of some of the business transactions but he did not know: "I think she did to a certain extent."

■ Tony was the only child who testified as to the claim of undue influence. We have gone over the record carefully and find nothing therein which would sustain such claim. Under the record we find that Tony was the only child who attempted to influence his father, and his method was not by help, kindness, or persuasion but by abuse, blasphemy, and denunciation, and this up to within a short time of his father's death. We find no merit to appellants' claim that the deed in question was brought about by undue influence.

VI. The last proposition set forth by appellants is to the effect that as Mary Klein had used and occupied the homestead of decedent she is presumed to have elected to take it for life and abandoned her distributive share.

Appellants have not argued that proposition, stating that, as Mary Klein died after the submission of the case, the question is now moot. Consequently, we do not consider such proposition.

In conclusion we hold that the trial court in quieting

appellee's title and denying appellants' claims did not err and the case is affirmed.—Affirmed.

OLIVER, C. J., and BLISS, HALE, GARFIELD, MULRONEY, SMITH, and HAYS, JJ., concur.