IN THE SUPREME COURT OF IOWA

 No. 81 / 03-1525

 Filed January 13, 2006

GENEVIEVE LYNN ORUD, ELMER LEE WILLERS,
DAWN MARIE WILLERS, and CONNIE ALEXANDER,

 Appellees,

vs.

NANCY A. GROTH,

 Appellant,

and

BRUCE E. GROTH, TERRY A. WILLERS,
and SHARON K. WILLERS,

 Cross-Appellees.

 On review from the Iowa Court of Appeals.
 Appeal from the Iowa District Court for Scott County, David H.
Sivright, Jr., Judge.

 Defendant appeals adverse judgment awarding plaintiffs a share of
proceeds from sale of property defendant held in trust, and plaintiffs
cross-appeal, challenging exoneration of other defendants and calculation
of damages. DECISION OF COURT OF APPEALS VACATED. JUDGMENT OF DISTRICT
COURT AFFIRMED AS MODIFIED ON APPEAL AND AFFIRMED ON CROSS-APPEAL. CASE
REMANDED.

 Stephen P. Wing of Dwyer & Wing, P.C., Davenport, for appellant and
cross-appellees.

 Jack E. Dusthimer of Jack E. Dusthimer, P.C., Davenport, for
appellees.
TERNUS, Justice.
 The appellant, Nancy Groth, appeals an adverse judgment in an action
brought by her siblings to obtain their share of the proceeds from the sale
of property originally owned by the parties’ mother. The plaintiffs filed
a cross-appeal asserting the court erred in failing to enter judgment
against the other defendants, in calculating the plaintiffs’ damages, and
in failing to order partition of the property. The court of appeals
increased the damage award, but otherwise affirmed the district court.
Upon our review of the parties’ arguments and the relevant authority, we
conclude the judgment entered against Nancy Groth should be reduced.
Therefore, we vacate the decision of the court of appeals, modify the
judgment entered against the appellant, and affirm the trial court’s
judgment in all other respects.
 I. Facts and Prior Proceedings.
 The appellees, Genevieve Orud, Elmer Willers, Dawn Willers, and Connie
Alexander, are siblings of the appellant, Nancy Groth, and the cross-
appellee, Terry Willers. The mother of these parties, Candace Dilley,
owned a home in LeClaire, Iowa. Nancy and her husband, Bruce Groth, lived
in this house with Dilley and Dawn Willers because Dilley could not afford
her home without Nancy’s financial assistance. In order to persuade Nancy
to remain in the home, Dilley offered to put Nancy’s name on the deed so
Nancy could deduct taxes and mortgage interest on her income tax return.
 On May 25, 1990, Dilley signed a quitclaim deed in the office of her
attorney, giving Nancy joint tenancy ownership in the property with full
rights of survivorship. Four days later, on May 29, 1990, Dilley returned
to her attorney’s office and signed a letter that stated in relevant part:

 Dear Children:

 This letter is written as I undertake to transfer ownership of
 my home . . . into Nancy’s name. I have prepared and am filing a Quit
 Claim Deed from me, as surviving joint tenant of my husband . . . to
 Nancy and me as joint tenants. This Deed will place the property in
 joint tenancy with Nancy and me.

 The purpose of this transfer of the property to Nancy’s name is
 so that she can claim a tax deduction for the real estate taxes and
 mortgage interest payments. She makes them now anyway and I live with
 her there and her husband.

 I consider the true ownership of the property to be mine and,
 should Nancy at any time sell the property, it is my direction and
 wish that she divide the property proceeds equally with those of you
 who are surviving.
Each of the siblings received a copy of Dilley’s letter. The quitclaim
deed was recorded on May 30, 1990, the day after the letter was signed.
 Dilley died in 1993. Subsequently, in 1997, Nancy sold the house to
her brother, Terry Willers and his wife, Sharon, for $64,000. The other
siblings demanded their share of the proceeds in an amount that reflected
the appraised value of the home, a sum considerably more than the sale
price. When payment was not forthcoming, this suit was filed.[1] The
plaintiffs asserted Dilley’s letter created a trust, and Nancy, as the
trustee, had a fiduciary duty to disburse the sale proceeds to Dilley’s
children. In a prior appeal, we held the plaintiffs had stated a viable
claim for relief. See Orud v. Groth, 652 N.W.2d 447, 450 (Iowa 2002) (Orud
I).
 On May 20, 2003, the matter was tried to the district court. The
court ruled that an express trust had been created and that Dilley’s letter
satisfied the statute of frauds. In determining the proceeds to be
distributed among the siblings, the court used the fair market value of the
property as the baseline, and concluded the property’s fair market value at
the time of the sale was its assessed value of $94,920. After deducting a
$44,000 mortgage on the property, the court divided the remaining $50,920
between the six siblings, awarding each plaintiff $8,487. The court
entered judgment against Nancy for this amount in favor of each of the four
plaintiffs. The plaintiffs’ claims against Bruce Groth, Terry Willers, and
Sharon Willers were dismissed.
 Nancy and the plaintiffs appealed, and the case was transferred to
the court of appeals. That court affirmed the trial court’s conclusion
that Nancy held the property subject to a trust in the proceeds, but it
disagreed with the measure of damages. Although the court of appeals
concluded the district court correctly relied on the assessed value, it
held the district court should not have deducted the entire mortgage amount
from that sum. Because only $29,000 of the original mortgage proceeds had
been used for property-related purposes (improvements to the house and
satisfaction of a prior mortgage on the property), the court of appeals
determined only that amount was properly deducted from the sale proceeds to
arrive at each sibling’s share. Accordingly, the court of appeals held
that each plaintiff was entitled to $10,986.67. It refused to reverse the
trial court’s decision that judgment should be entered solely against
Nancy, concluding there was no legal basis for imposing liability on the
other defendants.
 The appeal is now before this court after we granted the applications
for further review filed by Nancy and the plaintiffs. As this matter was
tried in equity, our review is de novo. See Johnson v. Kaster, 637 N.W.2d
174, 177 (Iowa 2001). Although we are not bound by the trial court’s fact
findings, we do give weight to those findings. See In re Estate of Herm,
284 N.W.2d 191, 199 (Iowa 1979).
 II. Existence of Express Trust.
 The first assignment of error by Nancy on appeal is the trial court’s
determination that she took title to the property subject to a trust in the
proceeds for the benefit of Dilley’s surviving children. Nancy claims the
deed was delivered to her and title transferred before the letter creating
the trust was signed. She argues her mother could not retroactively
restrict her rights in the property by the creation of a trust after title
had passed.
 In order for a transfer of title to take place under a deed, there
must be actual or symbolic delivery accompanied by the grantor’s intention
to transfer title at that time without any reservation of control. Orud I,
652 N.W.2d at 451; Lathrop v. Knoop, 202 Iowa 621, 623, 210 N.W. 764, 766
(1926) (stating “delivery may be made by the grantor to a third person” so
long as there is a present intent to pass title without any reservation of
control). Nancy claims the deed executed by her mother was symbolically
delivered on May 25 because, according to Nancy, Dilley left the deed with
her attorney on that date for recording. Nancy also relies on the
presumption that delivery occurred on the date the deed was executed, which
in this case was May 25.[2] See Conway v. Rock, 139 Iowa 162, 164, 117
N.W. 273, 274 (1908) (stating delivery is presumed to have occurred on date
deed was signed). Although this presumption supports Nancy’s argument, it
is not conclusive and may be overcome by clear, convincing and satisfactory
evidence to the contrary. See Jones v. Betz, 203 Iowa 767, 768, 210 N.W.
609, 609 (1926).
 The decisive factual issue in the present case is whether there is
clear, convincing and satisfactory evidence that the deed was not delivered
until after Dilley restricted Nancy’s right to the proceeds from a sale of
the property. As we noted in Orud I, if the deed was delivered before
Dilley’s direction to Nancy that the proceeds be divided among the
siblings, Dilley could not later impose such a restriction on Nancy’s
ownership. 652 N.W.2d at 451; accord Klein v. Klein, 239 Iowa 40, 52, 29
N.W.2d 163, 169 (1947). On the other hand, if delivery took place after
Dilley imposed the conditions under which Nancy took title, Nancy’s title
was subject to a trust on the proceeds from a sale of the property. Orud
I, 652 N.W.2d at 451.
 We agree with the district court and the court of appeals that there
is clear, convincing and satisfactory evidence that Dilley’s intent that
Nancy hold the proceeds from a sale of the property in trust for Dilley’s
surviving children was made known to Nancy before delivery of the deed.[3]
Nancy testified she accompanied her mother to the attorney’s office on May
25, and there was a discussion about the letter at that time. Dilley
signed the deed on May 25, but the letter was not ready on that day.
Consequently, Dilley and Nancy returned on May 29 so Dilley could review
and sign the letter. Importantly, as the court of appeals observed,
Dilley’s letter is written in the present tense, indicating Dilley had not
delivered the deed or transferred her interest in the property prior to
executing the letter. (Dilley stated in the letter, “I . . . am filing a
Quit Claim Deed from me . . . to Nancy and me as joint tenants. This Deed
will place the property in joint tenancy with Nancy . . . .” (Emphasis
added.)). Moreover, the deed was not recorded until after Dilley signed
the letter. We think this evidence is sufficient to rebut the presumption
that delivery occurred on the date the deed was signed. Therefore, Nancy
took title to the property subject to the obligation to carry out the terms
of the express trust created by Dilley’s letter. Nancy argues this result
undermines our system of land title examination by permitting a party to
challenge the clear terms of a deed with extrinsic evidence. This argument
misconstrues the nature of the trust created by Dilley. Dilley did not
restrict Nancy’s ability to deal with the property during the time that
Nancy held title, including Nancy’s right to mortgage the property or to
transfer title to a third person. The trust merely required that if Nancy
chose to sell the property, the proceeds from the sale should be divided
equally among Dilley’s children. Enforcing this obligation in no way
undermines the reliability of our land title system. In any event, the
restriction on Nancy’s ownership imposed by the trust would not have
prevented transfer of title to a bona fide purchaser with no notice of the
trust. See Restatement (Second) of Trusts § 284, at 47-48 (1959).
 III. Statute of Frauds.
 Nancy also asserts the evidence was insufficient to establish a trust
because there was no writing that satisfied the requirements of the statute
of frauds. She relies on a statement this court made in Orud I that “‘[a]
letter signed by the trustee whether written to the beneficiary or to
another person, and whether mailed or not,’” would be sufficient to meet
the requirement of a writing. 652 N.W.2d at 452 (quoting Restatement
(Second) of Trusts § 47 cmt. b) (emphasis added). Nancy argues the letter
in this case does not satisfy the statute of frauds because it was signed
by the trustor, Dilley, rather than by the trustee, Nancy.
 The example we gave in Orud I is not the only type of writing that
would satisfy the statute of frauds. In pertinent part Restatement (Third)
of Trusts section 23 states:

 Where the owner of property transfers it inter vivos to another
 person upon an inter vivos trust for which a statute of frauds
 requires a writing, a writing evidencing the trust as provided in § 22
 is sufficient to satisfy the requirements of the statute if it is
 signed:

 (a) by the transferor before or at the time of the transfer; or

 (b) by the transferee

 (i) before or at the time of the transfer, or

 (ii) after the transfer was made to the transferee but
 before the transferee has transferred the property to a third
 person.

Restatement (Third) of Trusts § 23(2) (2003) (emphasis added). Dilley, the
transferor, signed the letter creating the trust prior to or at the time of
delivery of the deed. Therefore, this writing satisfies the statute of
frauds.
 IV. Damages.
 Nancy’s failure to distribute the proceeds of the sale as required by
the trust subjects her to liability to the beneficiaries. See 76 Am. Jur.
2d Trusts § 345, at 399 (2005) (stating “a failure to administer the trust
in accordance with its terms renders a trustee liable for any injury
sustained thereby by . . . any person beneficially interested in the
trust”). Nancy asserts, however, that the recoverable damages were
incorrectly computed by the trial court and the court of appeals. First,
she argues that because her mother wanted the property to remain in the
family, Nancy could properly sell the land for a below-market-value price
if necessary to interest one of her siblings in purchasing the property.
Consequently, she contends the court of appeals and district court erred in
calculating the proceeds based on the fair market value of the property
rather than the actual sale price. Secondly, Nancy claims that even if the
fair market value of the property is the correct starting point in
determining the proceeds to be distributed, both courts overvalued the
house. Finally, Nancy asserts her mother intended to permit Nancy to
deduct “from the gross sale price all the costs of sale, mortgages, and
other items paid out at the time of closing to determine the proceeds for
distribution.” If such deductions are not allowed, suggests Nancy, she
will be bankrupted, and that result, she argues, was clearly not intended
by her mother. She contends the court of appeals erred in modifying the
district court’s judgment deducting the full amount of the mortgage.
 A. Sale price. We agree with the court of appeals and district
court that Nancy, as the trustee, had an obligation to sell the property
for its fair market value.[4] See Johnson v. Johnson, 242 Iowa 27, 31, 45
N.W.2d 573, 575 (1951) (holding trustee with the power to sell trust
property “must, however, sell for an adequate price”). Even if Dilley
preferred that the property remain in the family, that preference would not
automatically allow Nancy to sell the property to a family member at a
reduced price. To infer such a power would be inconsistent with the
express terms of the trust. If Nancy were allowed to sell the property to
one beneficiary below market value, the purchasing beneficiary would in
effect receive a larger share of the otherwise available proceeds at the
expense of the other beneficiaries. That result would violate Dilley’s
express intent that the beneficiaries benefit equally from the sale of the
property. See also id. at 29, 45 N.W.2d at 574 (“A trustee must act at all
times . . . impartially between the several beneficiaries [of the
trust].”). Therefore, the trial court properly focused on the fair market
value of the property as the baseline for determining the distributable
proceeds. We next determine what the fair market value of the property
was.
 B. Fair market value. There were several items of evidence relevant
to the fair market value of this property. The plaintiffs offered the
assessor’s records showing the property had had an assessed value of
$94,920 since 1995. In addition, the plaintiffs introduced evidence that
the bank financing Terry and Sharon Willers’ purchase of the property had
an appraisal done that showed an appraised value of $105,000. Terry
testified, however, that this value was erroneous. He stated without
contradiction that the appraiser had included boat docks that belonged to
someone else in the valuation of the property, which had inflated the
appraisal by $10,000. Terry also testified that he made $20,000 of
improvements to the property before the appraisal was done. The
documentary evidence in the record shows that Nancy accepted Terry’s offer
to purchase the property for $64,000 on April 4, 1997, but the closing did
not occur until November 13, 1997. Between April and November, Terry made
extensive repairs to the house and driveway. The defendants also
introduced a videotape showing structural and other problems that remained
even after these repairs had been made. Finally, Nancy testified that a
realtor had offered to put the property on the market for an asking price
of $67,000.
 In considering this evidence we place our greatest reliance on the
appraisal made prior to the closing as showing the fair market value of the
property at that time. We think this sum must be reduced, however, by the
value of the boat docks erroneously included in the appraisal, as well as
the $20,000 in improvements made by Terry after the purchase price was set.
 We are persuaded the fair market value of the property at the time Nancy
became contractually bound to sell the property to Terry and Sharon was
$75,000. We now consider what items are properly deductible from the fair
market value to arrive at the distributable proceeds.
 C. Mortgage deduction. Dilley instructed Nancy to “divide the
property proceeds equally.” The word “proceeds” means “the net sum
received . . . after deduction of any discount or charges.” Webster’s
Third New International Dictionary 1807 (unabr. ed. 2002). To determine
the extent to which the $44,000 mortgage pay off amount is properly
deducted from the sum received by Nancy upon sale of the property, we focus
on the purpose of the mortgage. The record established that the funds
obtained by Nancy when the property was mortgaged were used for several
purposes, not all property related. Some of the funds were used to pay off
a prior mortgage and make improvements to the house on the property, but
the balance of the mortgage funds was used by Nancy to buy a car for Dawn
and to pay Nancy’s personal debts and expenses.
 “[A]s a general rule trustees are prohibited from engaging in self-
dealing transactions with the trust and from obtaining personal advantage
from their dealings with trust property.” Harvey v. Leonard, 268 N.W.2d
504, 512 (Iowa 1978); accord Coster v. Crookham, 468 N.W.2d 802, 806 (Iowa
1991) (stating a “‘trustee violates his duty to the beneficiary . . . where
he uses the trust property for his own purposes’” (quoting Restatement
(Second) of Trusts § 170 cmt. l)); 76 Am. Jur. 2d Trusts § 471, at 514-15
(stating trustee cannot use or mortgage trust property for his personal
interest). Nancy violated this duty when she used the funds obtained by
mortgaging the property for her personal benefit. Therefore, to the extent
the mortgage was incurred for Nancy’s own purposes, it is not a proper
deduction from the sale price. See Coster, 468 N.W.2d at 806 (“‘If the
trustee in violation of his duty to the beneficiary uses trust property for
his own purposes and makes a profit thereby, he is accountable for the
profits so made.’” (quoting Restatement (Second) of Trusts § 206 cmt. j));
76 Am. Jur. 2d Trusts § 468, at 513 (stating trustee is liable to trust for
any losses caused by trustee’s self-dealing). Accordingly, the court of
appeals properly limited the deduction of the mortgage to $29,000, that
portion of the mortgage incurred to improve the home and pay off a prior
mortgage on the property. The district court erred in allowing the entire
mortgage to be subtracted from the fair market value in determining the
proceeds to be distributed to the beneficiaries.
 D. Calculation of damages. We have determined that the fair market
value of the property at the time it was sold was $75,000. From that
amount the mortgage on the property attributable to property-related
expenses—$29,000—must be deducted to compute the proceeds to be divided
among the six siblings. Thus, the proceeds to be distributed are $46,000
($75,000 minus $29,000), and each sibling is entitled to $7,666.66 ($46,000
÷ 6). We modify the judgment entered against Nancy Groth and in favor of
the plaintiffs accordingly.
 V. Liability of Other Defendants.
 A. Terry and Sharon Willers. The plaintiffs assert in their
application for further review that the district court and court of appeals
erred in failing to impose liability on Terry Willers and his spouse,
Sharon, and in refusing to make the judgment a lien against the property.
This court has recognized that a third party may be liable for a trustee’s
breach of fiduciary duty. See Coster, 468 N.W.2d at 809. In Coster, we
quoted the following rule from the Restatement (Second) of Trusts:

 “A third person who, although not a transferee of trust property, has
 notice that the trustee is committing a breach of trust and
 participates therein is liable to the beneficiary for any loss caused
 by the breach of trust.”

Id. (quoting Restatement (Second) of Trusts § 326, at 124) (emphasis
omitted). A similar rule exists for a transferee of trust property “who
takes with notice of the breach of trust.” Restatement (Second) of Trusts
§ 288, at 55.
 The first issue is whether Terry and Sharon had notice that the sale
to them was a breach of trust by Nancy. “A person has notice of a breach
of trust if . . . he knows or should know of the breach of trust.” Id. §
297, at 74. A transferee knows or should know of a breach of trust if he
knows or should know (1) of the existence of a trust, (2) the terms of the
trust, and (3) that the trustee is improperly deviating from the terms of
the trust. Id. § 297 cmt. c, at 76. Here, Nancy’s breach lay not in the
transfer of the property, since it was anticipated in Dilley’s letter that
Nancy would at some point sell the property. Nancy’s primary breach was of
her fiduciary duty to ensure that all siblings shared equally in the
proceeds of the sale. The governing principle of law for this situation is
set forth in the Restatement:

 If a trustee in the proper exercise of a power of sale sells
 trust property, and the purchaser pays the purchase price to the
 trustee without notice that the trustee intends to misapply the
 purchase price, the purchaser is not liable although the trustee
 misapplies the purchase price.

Id. § 321 cmt. b, at 113. The plaintiffs have not proved that Terry and
Sharon had notice that Nancy did not intend to make the required payments
to her siblings. Therefore, the Willers are not liable for the sums
received by Nancy, but which she failed to turn over to the other trust
beneficiaries. This conclusion does not, however, dispose of possible
liability based on the deficient purchase price.
 As noted above, to establish the liability of a transferee, a
beneficiary must prove the transferee knew or should have known the trustee
was violating the trust. We cannot find under the present record that
Terry and Sharon Willers knew or should have known that the sale to them
was a violation of the trust terms. The evidence showed that Terry Willers
notified his sister, Connie Alexander, of his impending purchase of the
property. Together they went to an attorney to discuss the impact of their
mother’s letter on the sale. Shortly after this meeting, Alexander wrote a
letter to that attorney, with a copy of the letter sent to Terry, in which
she stated that it was satisfactory to the other siblings “that Terry be
allowed to purchase this home.” She further emphasized that she did not
want the siblings’ efforts to share in the proceeds to in any way cause
Nancy to back out of her “signed commitment” to sell the property to Terry.
 It is opportunistic for the plaintiffs to claim now, after encouraging
Terry’s purchase of the property, that he was a joint tortfeasor with Nancy
and should be held liable for her breach of trust. The plaintiffs
themselves led the Willers to believe that the sale to them was not itself
a breach of Nancy’s fiduciary duty to the siblings. Consequently, we agree
with the trial court that there is no basis upon which to impose liability
on Terry and Sharon Willers. Therefore, we affirm the trial court’s
judgment in their favor.
 B. Bruce Groth. As noted above, a third party may be liable for a
trustee’s breach of duty if the third party “has notice that the trustee is
committing a breach of trust and participates therein.” Restatement
(Second) of Trusts § 326, at 124. Bruce Groth was not a seller of the
property, nor was he a buyer. His only participation in the transfer of
the property was releasing any rights in the property he held as Nancy’s
spouse. We do not think his involvement in the transaction in this capacity
is “participation” so as to subject him to liability for Nancy’s breach of
trust. Therefore, we also affirm the judgment entered by the district
court in favor of Bruce Groth.
 VI. Right to Partition.
 The plaintiffs claim they are entitled to the equitable remedy of
partition. The trust instrument—Dilley’s letter—did not give the siblings
an interest in the property itself; they had only a right to share in the
proceeds of a sale of the property. Under these circumstances, partition
is not available to the beneficiaries of the trust:

 Where a trust instrument contains a positive direction that the
 trustees sell the trust real estate and divide the proceeds among the
 persons designated, a beneficiary of the trust may not maintain
 partition, since the creator of the trust has provided the mode of
 division or distribution.

59A Am. Jur. 2d Partition § 47, at 40-41 (2003). Therefore, we reject the
plaintiffs’ request that the property be partitioned to satisfy their right
to a share of the proceeds.
 VII. Disposition.
 Having considered the arguments of the parties, we vacate the
decision of the court of appeals. We affirm the judgment of the district
court with respect to defendant Nancy Groth, as modified. Upon remand,
judgment shall be entered against Nancy Groth and in favor of each of the
four plaintiffs in the amount of $7,666.66, plus interest as provided in
the original order. We affirm the judgment of the district court in favor
of the other defendants. Costs are taxed three-fourths to defendant Nancy
Groth and one-fourth to plaintiffs.
 DECISION OF COURT OF APPEALS VACATED. JUDGMENT OF DISTRICT COURT
AFFIRMED AS MODIFIED ON APPEAL AND AFFIRMED ON CROSS-APPEAL. CASE
REMANDED.
-----------------------
 [1] In addition to suing their sister Nancy and brother Terry, the
plaintiffs also named their siblings’ spouses as defendants, explaining on
appeal that the plaintiffs considered them to be “joint tortfeasors.”
 [2] Nancy also points to the presumption of proper delivery generated
by a signed, acknowledged and recorded deed. See Hogdson v. Dorsey, 230
Iowa 730, 733, 298 N.W. 895, 897 (1941). The plaintiffs do not appear to
contest, however, that the deed was properly delivered. The disputed issue
is when it was delivered.
 [3]Nancy complains that the trial court and the court of appeals
ignored her testimony that her mother said the letter was simply intended
to placate Nancy’s sister, Connie, and was not meant to impose an
obligation on Nancy to split the proceeds if and when the property was
sold. Nancy testified she and her mother had an oral agreement that Nancy
would allow Dawn to live in the house and if Nancy sold the house, she
would try to keep it in the family. Three of the plaintiffs testified to
the contrary, stating Dilley told them prior to execution of the deed that
she intended the proceeds from a sale of the property to be divided among
the siblings. Of course the actual letter expresses only an intent that
Nancy take the property subject to Dilley’s desire that any sale proceeds
benefit all of Dilley’s children. Even though there was evidence to
support Nancy’s position, it is up to the fact finder to resolve conflicts
in the evidence and to determine which evidence was most credible. More
importantly, the existence of contrary evidence does not preclude us from
finding that the evidence in support of the plaintiffs’ case was clear,
convincing, and satisfactory.
 [4]Other than contesting the existence of a trust, Nancy has not
challenged the underlying assumption of the trial court that she is
strictly liable to the beneficiaries for her failure to sell the property
at fair market value. See Iowa Code § 633.160 (2005) (stating fiduciary is
liable for any “negligent or willful act or nonfeasance” that causes loss);
see also 76 Am. Jur. 2d Trusts § 363, at 418 (stating trustee has a duty to
act in good faith and “within the bounds of reasonable judgment” in
exercising discretionary powers). Therefore, we do not consider the
propriety of holding Nancy strictly liable for the difference between the
sale price and the fair market value of the property. See Hyler v. Garner,
548 N.W.2d 864, 870 (Iowa 1996) (holding that even in appeals of equity
cases where review is de novo, review is limited to those errors
specifically identified on appeal).